Argued and submitted March 8, judgment of Tax Court affirmed May 31, 2013

CON-WAY INC. & AFFILIATES,
*Plaintiff-Respondent,*

*v.*

DEPARTMENT OF REVENUE,
State of Oregon,
*Defendant-Appellant.*

(TC 5003; SC S060141)

302 P3d 804

Darren Weirnick, Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs were Ellen F. Rosenblum, Attorney General and Melisse S. Cunningham, Assistant Attorney General.

Eric J. Kodesch, Stoel Rives LLP, Portland, argued the cause for respondent. With him on the brief were James N. Westwood and Robert T. Manicke.

BREWER, J.

**BREWER, J.**

The issue presented in this appeal is whether a taxpayer may satisfy its obligation to "pay annually to the state" the $75,000 corporate minimum tax, ORS 317.090(2),[1] by claiming on its corporate excise tax return a $75,000 "Business Energy Tax Credit" (BETC) under ORS 315.354.[2] The Tax Court concluded that the taxpayer, Con-Way, could satisfy its tax liability under ORS 317.090(2) by claiming a BETC on its tax return. The Department of Revenue (department) appealed, arguing that the Tax Court's conclusion was inconsistent with ORS 317.090(2), on the ground that a tax credit cannot be used to pay or otherwise satisfy the minimum tax imposed under ORS 317.090(2). We affirm.

The pertinent facts are undisputed. Con-Way is a corporation that does business within the State of Oregon. For tax year 2009, Con-Way reported Oregon sales of $79,304,714, resulting in a tax liability of $75,000 under ORS 317.090(2). Also for tax year 2009, Con-Way possessed a valid BETC under ORS 315.354(1) that it had purchased from a third party in 2008.[3] On its 2009 corporate excise tax return, Con-Way attempted to apply that credit against its tax liability of $75,000 under ORS 317.090(2). Con-Way also

---

[1] ORS 317.090 provides, in part:

"(2) Each corporation or affiliated group of corporations filing a return under ORS 317.710 shall pay annually to the state, for the privilege of carrying on or doing business by it within this state, a minimum tax as follows:

"(a) If Oregon sales properly reported on a return are:
"* * * * *

"(k) $75 million or more, but less than $100 million, the minimum tax is $75,000.
"* * * * *

"(3) The minimum tax is not apportionable (except in the case of a change of accounting periods), and is payable in full for any part of the year during which a corporation is subject to tax."

[2] ORS 315.354 provides, in part:

"(1) A credit is allowed against the taxes otherwise due under ORS chapter 316 (or, if the taxpayer is a corporation, under ORS chapter 317 or 318), based upon the certified cost of the facility during the period for which that facility is certified under ORS 469B.130 to 469B.169."

[3] The details of that transaction are not in the record, but the department does not contest the validity of the BETC that Con-Way claimed on its 2009 tax return.

had paid $50,000 in estimated tax, and it sought to have $25,000 of that amount applied to its 2010 tax liability and to have the remaining $25,000 refunded.

The department disallowed Con-Way's application of the BETC to its $75,000 tax liability under ORS 317.090(2).[4] The department then applied the $50,000 in estimated payments to the liability and assessed a deficiency of $25,000, together with associated penalties and interest, against Con-Way. Con-Way timely appealed the department's decision, and the case was designated for hearing in the Regular Division of the Tax Court.

Before the Tax Court, Con-Way argued that, because ORS 315.354(1) provides that a BETC applies to "taxes otherwise due * * * under ORS chapter 317," and because no statute rendered the BETC inapplicable, the department had erroneously disallowed the application of the BETC against its tax liability under ORS 317.090(2). The department replied that ORS 317.090(2) requires a taxpayer to "pay annually to the state * * * a minimum tax," that the term "pay" means to pay in cash, and the term "minimum" means that the amount of tax to be paid cannot be reduced. Because, according to the department, a tax credit only reduces a tax liability, and is not a form of cash payment, the department asserted that Con-Way could not satisfy its tax liability under ORS 317.090(2) by using the BETC.

The Tax Court rejected the department's argument, explaining:

> "In effect, the department asks the court to add words to the statute so that it reads that there is an obligation to pay 'in cash and without regard to any tax credit otherwise available to the taxpayer.' Not only does the statute not contain those words, the context of the revenue laws as a whole indicates that when the legislature desires to prevent a tax credit from being used to satisfy a minimum tax obligation, it knows how to say so and has, in fact, said so."

---

[4] The department also disallowed Con-Way's proposed apportionment of its $50,000 estimated tax payment. Con-Way has not challenged that action.

In support of its conclusion, the court noted that, unlike ORS 315.354(1), ORS 317.151(5)(a), which establishes a credit for contributions to certain technical property, provides that the credit "shall not be allowed against the tax imposed under ORS 317.090"[5] and that ORS 291.349(3), relating to the "kicker" tax credit for corporations, also provides that "no credit shall be allowed against tax liability imposed by ORS 317.090."[6] Finally, the Tax Court concluded:

"The obligation to pay the minimum tax to the state is no different from the obligation under ORS 317.070[7] to pay to the state the 'regular' tax. Credits may be applied against the regular tax and the argument of the department that the legislature meant something substantially different when it used the words 'pay' and 'payable' in ORS 317.090 is without statutory support. Further, the statutory text relating to the 'payable in full' provision indicates that the term is used to prevent a taxpayer from prorating its liability

---

[5] ORS 317.151 provides, in part:

"(1) A credit is allowed against the taxes otherwise due under this chapter. The amount of the credit shall equal 10 percent of the fair market value of certain qualified charitable contributions, as described in this section.

"* * * * *

"(5)(a) Except as provided in paragraph (b) of this subsection [a carry-over provision], the credit allowed under this section shall not exceed the tax liability of the taxpayer and shall not be allowed against the tax imposed under ORS 317.090. To qualify for a credit under this section, the charitable contribution must be made without consideration and be accepted by the donee institution or school."

[6] ORS 291.349(3) provides:

"If the revenues received from the corporate income and excise taxes during the biennium exceed the amounts estimated to be received from such taxes for the biennium, as estimated after adjournment sine die of the odd-numbered year regular session, by two percent or more, the total amount of that excess shall be credited to corporate income and excise taxpayers in a percentage amount of prior year corporate excise and income tax liability as determined under subsection (5) of this section. However, no credit shall be allowed against tax liability imposed by ORS 317.090."

[7] ORS 317.070 provides:

"Every centrally assessed corporation, the property of which is assessed by the Department of Revenue under ORS 308.505 to 308.665, and every mercantile, manufacturing and business corporation and every financial institution doing business within this state, except as provided in ORS 317.080 and 317.090, shall annually pay to this state, for the privilege of carrying on or doing business by it within this state, an excise tax according to or measured by its Oregon taxable income, to be computed in the manner provided by this chapter, at the rate provided in ORS 317.061."

in the event it is subject to tax for only a portion of the year."

The Tax Court granted Con-Way's motion for summary judgment, and the department appealed from the ensuing judgment.

The parties renew their arguments before this court. Reduced to their core, those arguments concern the meanings of the terms "pay" and "minimum" in ORS 317.090(2), and the term "credit" in ORS 315.354(1). As noted, the department asserts that a BETC may not be used to satisfy the minimum tax payable under ORS 317.090(2), because (1) tax "credits" can operate only to reduce, not fully satisfy, a tax liability; (2) a "minimum" tax cannot be reduced; and (3) a credit may not be used to "pay" a tax, because the term "pay" requires cash payment. Those assertions pose questions of statutory interpretation, which we resolve using the principles set out in *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009). We look first to the text of the pertinent statutes, in context, then to their legislative history, and finally, if the statutes are ambiguous, we will resolve any ambiguity by applying well-established canons of statutory construction. *Id.* at 171-72.[8] "Statutory context includes other provisions of the same statute and other related statutes, as well as the preexisting common law and the statutory framework within which the statute was enacted." *Fresk v. Kraemer*, 337 Or 513, 520-21, 99 P3d 282 (2004).

Before addressing the parties' particular arguments, it is useful to briefly outline the evolution of the pertinent statutory scheme. Between 1945 and 1975, the statutory predecessors of ORS 317.090 had prohibited the application of certain discounts to the minimum corporate tax.[9] In

---

[8] The parties have not proffered any legislative history for our consideration, and our review of the available records pertaining to the enactments of ORS 317.090 and ORS 315.354 reveals no discussion of the issue presented in this case. The department has proffered newspaper editorials favoring the passage of Measure 67, which amended ORS 317.090(2) in 2010, as pertinent legislative history. We discuss those materials below.

[9] For example, ORS 317.090 (1971) provided:

"Each taxpayer named in ORS 317.055, 317.060, and 317.070 shall pay annually to the state, for the privilege of carrying on or doing business by it within this state, a minimum tax of $10 ***[.] The minimum tax shall not be apportionable *** and for tax years beginning December 31, 1944, shall not

1975, the legislature deleted from ORS 317.090 a provision that the minimum tax imposed by that statute "shall not be reduced by \* \* \* any discount." *See* Or Laws 1975, ch 368, § 6. After that prohibition was removed, nothing in the text of ORS 317.090 itself prohibited the application of credits or discounts to the minimum tax. The BETC statute, ORS 315.354, was enacted in 1979. *See* Or Laws 1979, ch 512, § 12 (enacting ORS 316.140 and ORS 317.104); Or Laws 1993, ch 730, § 34 (enacting ORS 315.354 in lieu of ORS 316.140 and ORS 317.104). The 1979 legislature also enacted ORS 291.349, the kicker tax credit statute. *See* Or Laws 1979, ch 241, § 30. As noted, ORS 291.349(3) expressly prohibits applying that tax credit against the corporate minimum tax imposed by ORS 317.090, but there is no similar prohibition in ORS 315.354. In short, the 1979 legislature enacted two tax credit statutes, ORS 315.354 and ORS 291.349, in the wake of amendments to ORS 317.090, enacted four years previously, that had removed a bar to the application of discounts to the corporate minimum tax. However, the legislature expressly prohibited the application of only one of those two credits against the tax under ORS 317.090.

With that background in mind, we address the department's arguments in the order made. We begin with the department's assertion that a tax credit cannot be used to pay the minimum corporate tax because tax credits, by definition, operate only to "reduce" tax liability. ORS 315.354(1) provides:

> "A *credit is allowed against the taxes otherwise due* under ORS chapter 316 (or, if the taxpayer is a corporation, under ORS chapter 317 or 318), based upon the certified cost of the facility during the period for which that facility is certified under ORS 469B.130 to 469B.169."

(Emphasis added.) Several words in that provision inform our analysis. A "credit" is "a deduction from an amount otherwise due <a tax ~ for dividends received>." *Webster's Third New Int'l Dictionary* 533 (unabridged ed 2002). A "tax credit" is "[a]n amount subtracted directly from one's

---

be reduced by reason of any discount under OCLA 110-1523, as amended by section 1, chapter 438, Oregon Laws 1943, or any other discount authorized under any section of the excise tax law, but shall be payable in full for any part of the year during which a corporation is subject to tax."

total tax liability, dollar for dollar, as opposed to a deduction from gross income." *Black's Law Dictionary* 1501 (8th ed 2004).[10] Thus, under ORS 315.354(1), a BETC operates as a direct subtraction against the amount of tax otherwise due under a provision of ORS chapter 317. "Due" means "owed or owing as a debt." *Webster's* at 699. "Otherwise," which modifies "due," means "in a different way or manner." *Webster's* at 1598. Thus, the phrase "otherwise due" means that the taxes against which the credit is allowed may be satisfied in a *"different* way or manner"* (for example, by cash payment). That construct logically suggests that the BETC constitutes a "way or manner" of satisfying the taxes "otherwise due" under ORS chapter 317 which, of course, includes the corporate minimum tax under ORS 317.090.

The department counters that the legislature did not intend that a "credit" function as a "payment," because it has used those terms to signify distinct concepts in several statutes. As examples, the department relies on ORS 314.400(9), ORS 315.068(5), and ORS 305.265(12). ORS 314.400(9) provides:

"For purposes of subsections (1) to (3) of this section, the amount of tax required to be shown or that is shown on the report or return shall be reduced by the amount that is paid on or before the date prescribed for payment of the tax and by the amount of any credit against the tax that is claimed on the report or return. If the amount required to be shown as tax on the report or return is less than the amount that is actually shown as tax on the report or return, this subsection shall be applied by substituting the lower amount."

ORS 315.068(5) provides:

"If the amount allowable as a credit under this section, when added to the sum of the amounts allowable as a payment of tax under ORS 314.505 to 314.525, 316.187 and 316.583, *other payments of tax and other refundable credit* amounts, exceeds the taxes imposed by ORS chapters 314 to 318 (reduced by any nonrefundable credits allowed for

_____

[10] In 1979, when ORS 315.354 was enacted, *Black's* defined the term in different words, but the substantive meaning is unchanged. *See Black's Law Dictionary* 1310 (5th ed 1979) (defining "tax credit" as a "type of offset in which the taxpayer is allowed a deduction from his tax for other taxes paid. A credit differs from a deduction to the extent that the former is subtracted from the tax while the latter is subtracted from income before the tax is computed.").

the tax year), the excess shall be treated as an overpayment of tax and shall be refunded or applied in the same manner as other tax overpayments."

Finally, ORS 305.265(12) provides:

"If a return is filed with the department accompanied by payment of less than the amount of tax shown on or from the information on the return as due, the difference between the tax and the amount submitted is considered as assessed on the due date of the report or return (determined with regard to any extension of time granted for the filing of the return) or the date the report or return is filed, whichever is later. For purposes of this subsection, the amount of tax shown on or from the information on the return as due shall be reduced by the amount of any part of the tax that is paid on or before the due date prescribed for payment of the tax, and by any credits against the tax that are claimed on the return. If the amount required to be shown as tax on a return is less than the amount shown as tax on the return, this subsection shall be applied by substituting the lesser amount."

The department argues that, because the legislature used the term "paid" and "payments" separately from the term "credits" in the above statutes, it must have intended that a "credit" cannot effect a "payment." We disagree. Although the legislature used those terms to signify distinct concepts, it also provided that credits and payments function in the same manner in one significant respect; that is, they both satisfy, in part or whole, the amount of tax owed. Under ORS 305.265(12) and ORS 314.400(9), "credits" and "taxes paid" "reduce" the amount of tax either owed or required to be shown on a return. Moreover, in ORS 315.068(5) the legislature provided that, where the "sum" of both tax payments *and* tax credits exceeds a taxpayer's liability under ORS chapters 314 to 318, "the excess shall be treated as an *overpayment* of tax." (Emphasis added.) Thus, when the credit allowed under ORS 315.068 is added to a taxpayer's payments, ORS 315.068(5) provides that the "sum" constitutes an "overpayment" when it exceeds the amount of taxes imposed. That contextual usage reinforces the conclusion that the BETC provides a method of satisfying taxes otherwise due under ORS 317.090(2). Accordingly, we reject the department's contrary assertion.

We next address the department's argument that the term "minimum" in ORS 317.090(2) bars the use of credits to satisfy a corporation's minimum tax liability under ORS 317.090(2). To be sure, there is some appeal in the argument. After all, a "minimum" is "the least quantity assignable, admissible, or possible in a given case—opposed to *maximum*[.]" *Webster's* at 1438 (emphasis in original). *Black's* defines "minimum" as "[o]f, relating to, or constituting the smallest acceptable or possible quantity in a given case[.]" *Black's* at 1016. Thus, "minimum" refers to the "least possible" quantity; in other words, a quantity that cannot be reduced further. However, we do not view the statutory text in isolation; rather, we also look to the statutory context within which ORS 317.090(2) is found. *State v. Glushko/ Little*, 351 Or 297, 311, 266 P3d 50 (2011). As explained below, when viewed in context, it is apparent that the term "minimum" focuses on the *amount* of the tax imposed, not on how it must be satisfied.

The Tax Court looked to ORS 317.151(5)(a), which establishes a credit for contributions to certain technical property, and ORS 291.349(3), relating to the "kicker" tax credit, as pertinent context for ORS 319.090(2). We also begin our analysis of statutory context with those provisions. ORS 317.151(5)(a) provides, in part:

> "Except as provided in paragraph (b) of this subsection [regarding charitable contributions], the credit allowed under this section shall not exceed the tax liability of the taxpayer and *shall not be allowed against the tax imposed under ORS 317.090.*"

(Emphasis added.) ORS 291.349(3) provides:

> "If the revenues received from the corporate income and excise taxes during the biennium exceed the amounts estimated to be received from such taxes for the biennium, as estimated after adjournment sine die of the odd-numbered year regular session, by two percent or more, the total amount of that excess shall be credited to corporate income and excise taxpayers in a percentage amount of prior year corporate excise and income tax liability as determined under subsection (5) of this section. However, *no credit shall be allowed against tax liability imposed by ORS 317.090.*"

(Emphasis added.)

Con-Way argues that the phrases "shall not be allowed against the tax imposed under ORS 317.090," used in ORS 317.151(5)(a), and "no credit shall be allowed against tax liability imposed by ORS 317.090," used in ORS 291.349(3), demonstrate that, when the legislature intends not to allow a tax credit against the minimum tax imposed by ORS 317.090(2), it does so explicitly. The point is valid. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 614, 859 P2d 1143 (1993) ("The legislature knows how to include qualifying language in a statute when it wants to do so."). The presence in ORS 315.354 of the broad phrase "allowed against the taxes otherwise due" under ORS chapter 317, and the absence of an express prohibition in ORS 317.090 of the use of credits against the minimum corporate tax, weigh against the department's assertion that the legislature intended to prohibit the use of a BETC against that minimum tax.

In addition, the enactment history of ORS 317.090(2) discussed above reinforces the conclusion that the legislature's omission of a specific exception for that minimum tax in ORS 315.354(1) was purposeful. As noted, the statutory predecessors of ORS 317.090 had prohibited the application of certain discounts to the minimum tax. Again, as noted, in 1975, the legislature deleted from ORS 317.090 a provision that the minimum tax imposed by that statute "shall not be reduced by *** any discount." *See* Or Laws 1975, ch 368, § 6. After that prohibition was removed, nothing in the text of ORS 317.090 prohibited the application of credits or discounts to the minimum tax. When the 1979 legislature thereafter created tax credits under ORS 315.354 and ORS 291.349(1), it prohibited application of the latter credit against the tax under ORS 317.090, but it did not enact a similar prohibition in ORS 315.354. We presume that that omission was purposeful. Although the legislature may not have foreseen that a taxpayer would seek to apply a BETC to the corporate minimum tax—which in 1979, was $10—the text of ORS 315.354 nevertheless does not prohibit application of the BETC to the minimum tax.

The department's response is five-fold. First, the department asserts that the term "minimum" in ORS 317.090(2) is functionally identical to the different phrases

used in ORS 317.151(5)(a) and ORS 291.349(3); that is, it bars allowance of a credit against the minimum tax. We find that argument unconvincing. As discussed, when the legislature intends to deny a credit against the tax imposed by ORS 317.090, it has said so explicitly, by providing in ORS 291.349(3) that "no credit shall be allowed" and by providing in ORS 317.151(5)(a) that a credit "shall not be allowed against" that tax. In ORS 317.090(2), the legislature instead employed the distinct term "minimum." When the legislature used the explicit phrasing in ORS 291.349(3) and ORS 317.151(5)(a), it expressly referred to ORS 317.090. Accordingly, ORS 291.349(3) and ORS 317.151(5)(a) properly inform our interpretation of ORS 317.090(2) and ORS 315.354(1). From its choice of different wording in those statutes, we infer that the legislature did not intend "minimum" in ORS 317.090(2) to have the same meaning as the phrases used in ORS 291.349(3) and ORS 317.151(5)(a).

Second, the department argues that, because ORS 317.151(5)(a) was enacted after ORS 315.354, it cannot shed light on the legislature's intent in enacting ORS 315.354. It is true that later-enacted statutes are not, ordinarily, evidence of an earlier legislature's intent. *See Gaines*, 346 Or at 177 n 16 (noting that later-enacted statutes are not ordinarily indicative of the intent of earlier legislatures, but, nonetheless, "can be of some aid in interpreting" earlier statutes for certain limited purposes). However, this court will look to later-enacted statutes as "strong evidence" that, "when the legislature intends to condition [the operation of a statute on a certain event or requirement], it knows how to express that intention." *Gladhart v. Oregon Vineyard Supply Co.*, 332 Or 226, 233, 26 P3d 817 (2001). In *Gladhart*, we held that the legislature had not intended to enact a "discovery rule" when it used the term "occurs" in ORS 30.905(2). *Id.* at 234. We reached that conclusion, in part, because the legislature later enacted specific discovery rules in ORS 30.905(5), 30.907, and 30.908. *Id.* at 233. Likewise in this case, we think it unlikely that the legislature would have used the term "minimum" to disallow the use of credits against the minimum tax imposed by ORS 317.090(2), because, as the legislature demonstrated in both the 1979 session when it enacted ORS 291.349(3) contemporaneously

with ORS 315.354, and later in the 1985 session when it enacted ORS 317.151(5)(a), where it intends to create such exceptions, it "knows how to express that intention." *Id.*

Third, the department argues that, because it is part of the "kicker" tax rebate scheme, ORS 291.349(3) is "*sui generis*" and, thus, sheds no light on the legislature's intent in enacting ORS 315.354. We disagree. In ORS 291.349(3), the legislature used the same term—"credit"— that it used in ORS 315.354(1). Indeed, the legislature used nearly identical phrasing in the two statutes, providing in ORS 291.349(3) that "no credit shall be allowed against tax liability imposed by ORS 317.090" and providing, in ORS 315.354(1), that "a credit shall be allowed against the taxes otherwise due under * * * ORS chapter 317." In short, we deem ORS 291.349(3) to be proper context for our construction of ORS 315.354(1).

Fourth, the department argues that the amendment of ORS 317.090 in 1975 was solely intended "to remove obsolete and unnecessary statutory references" and, thus, does not illuminate the legislature's intent in enacting ORS 315.354. Again, we disagree. The 1975 legislature chose to delete a provision from ORS 317.090 that had been in place for 30 years and had barred the application of certain discounts to the tax imposed by that statute. That deletion was substantive, and we cannot presume that it was unintentional.

Finally, the department contends that the Tax Court's decision is at odds with the intent of the people in enacting Measure 67 (2010), which amended ORS 317.090 to increase the corporate minimum tax from $10 to, as pertinent here, $75,000. *See* Or Laws 2009, ch 745, § 1 (enacted as Measure 67 (2010) in the special election of January 26, 2010). The department argues that the information available to the voters who approved Measure 67 "indicate[s] that the voters did not expect or intend tax credits to be applied against minimum tax."

When interpreting a statute adopted through the initiative process, this court will look to "other sources of information that were available to the voters at the time

the measure was adopted and that disclose the public's understanding of the measure." *Ecumenical Ministries v. Oregon State Lottery Comm.*, 318 Or 551, 559 n 8, 871 P2d 106 (1994). "Such information includes the ballot title and arguments for and against the measure included in the voters' Pamphlet, and contemporaneous news reports and editorial comment on the measure." *Id.* As an initial matter, we note that the text of ORS 317.090 at issue here was not materially altered by Measure 67. Rather, Measure 67 reenacted the preexisting requirement of ORS 317.090 that "[e]ach corporation *** shall pay annually to the state, for the privilege of carrying on or doing business by it within this state, a minimum tax." *Cf.* ORS 317.090 (2007) ("Each taxpayer named in ORS 317.056 or 317.710 shall pay annually to the state, for the privilege of carrying on or doing business in this state, a minimum tax of $10."). What Measure 67 added to the statute were subsections (2)(a)(A)-(L) and (2)(b), which deleted the $10 minimum tax and replaced it with a schedule of taxes on "Oregon sales" and a $150 minimum tax on S-corporations. As discussed, nothing in the pertinent text of ORS 317.090(2) disallows the use of a credit against that tax. The addition of the schedule of taxes on Oregon sales, the tax on S-corporations, and the deletion of the $10 minimum tax do not alter that conclusion. The voters reenacted the core text of ORS 317.090 and did not include any provision disallowing the use of credits against the newly increased minimum tax.

Nonetheless, the department argues that statements in the Voters' Pamphlet emphasized that the amendments to ORS 317.090 would raise revenue, and that, "[b]ecause the voters intended to raise revenues by raising the minimum tax and since allowing credits against minimum tax reduces minimum tax revenues, allowing credits to reduce minimum tax conflicts with the voters' general intent when they adopted Measure 67." We have reviewed the Voters' Pamphlet statements regarding Measure 67, and they do evince a general intention to raise revenue. However, such an intention cannot override the text of ORS 317.090, which says nothing about whether credits may be allowed against the minimum tax. The text that is enacted into law controls our analysis, not the "general intent" of those who enacted it. *Gaines*, 346 Or at 171.

The department also proffers a number of newspaper editorials regarding Measure 67's effect. The gist of those articles is that, before the passage of Measure 67, corporations were using tax credits to reduce their corporate tax liability to the $10 minimum under ORS 317.090; corporations would then pay that $10 minimum in cash. From those editorials, the department infers that the voters would have understood that, "before Measure 67, corporations could not use tax credits against the $10 minimum tax, and that, because Measure 67 only increased the amount of the minimum tax, the voters thus would have understood that corporations would not be allowed to use credits against the newly increased minimum tax. Again, we disagree.

It is not apparent from the editorials proffered by the department that corporations were *barred* from using tax credits against the $10 minimum tax before the passage of Measure 67, only that the writers of those editorials believed corporations were not doing so. It is equally plausible that the voters would have inferred from the editorials that corporations were *choosing* not to use tax credits against the ORS 317.090 minimum tax, particularly if those same corporations had already used credits to reduce their tax liability to that $10 minimum. In any event, as noted, Measure 67 did not alter the text of ORS 317.090 at issue here, and nothing in the text of Measure 67 referred to tax credits. Even if we agreed with the inference that the department draws from the editorials that it has proffered, that inference would not override the text of ORS 317.090 that the voters enacted.[11] In sum, nothing in the text, context, or legislative history of either ORS 315.354 or ORS 317.090(2) indicates that the legislature intended the credit created by the former statute to be inapplicable to the tax prescribed by the latter statute. Instead, the texts of both statutes, when examined in context, compel the opposite conclusion.

---

[11] The department asserts that two maxims of construction favor its construction of ORS 317.090(2). This court will resort to general maxims of statutory construction "if necessary" to resolve ambiguities in a statute that remain after a consideration of the statute's text, context and legislative history. *Gaines*, 346 Or at 172. Resort to general maxims is not necessary in this case, because we determine that the text, context, and legislative history of ORS 315.354(1) and ORS 317.090(2) sufficiently resolve the issues presented.

Finally, the department argues that the word "pay," as used in ORS 317.090(2), requires payment in cash. As noted, ORS 317.090(2) provides, in part:

> "Each corporation or affiliated group of corporations filing a return under ORS 317.710 shall *pay annually to the state*, for the privilege of carrying on or doing business by it within this state, a *minimum tax* as follows:
>
> "(a)   If Oregon sales properly reported on a return are:
>
> "* * * * *
>
> "(K)   $75 million or more, but less than $100 million, the minimum tax is $75,000.
>
> "* * * * *
>
> "(3)   The minimum tax is not apportionable (except in the case of a change of accounting periods), and is *payable in full* for any part of the year during which a corporation is subject to tax."

(Emphases added.) The ordinary meaning of "pay" is "to discharge indebtedness for: SETTLE <~ a bill> <~ a tax>[.]" *Webster's* at 1659. "Payable," as used in the phrase "payable in full" in ORS 317.090(3) means "capable of being paid[.]" *Id.* With those meanings in mind, we return to the statutory text.

As an initial matter, we note that ORS 317.090(2) does not contain an explicit textual requirement that the minimum tax be paid in cash. Thus, for the department's construction to prevail, a "payment in cash" requirement must be implicit in the term "pay" in ORS 317.090(2) or the term "payable" in the phrase "payable in full" in ORS 317.090(3). From the definitions set out above, however, it is apparent that neither term contains such an implied requirement. The ordinary meaning of "pay" does not address what payment must consist of, nor does the ordinary meaning of "payable."

The department remonstrates that the phrase "pay annually to the state * * * [a] minimum tax" in ORS 317.090(2) imposes a requirement to "discharge an irreducible pecuniary obligation to the state by the transfer of lawful money to the government." The department asserts

that, contrary to the legislature's intent in imposing the minimum tax, by "claiming [the] credit on its 2009 return, Con-Way paid the State of Oregon nothing." The department points to ordinary and legal meanings of the term "tax" to buttress that conclusion. "Tax," as pertinent here, means:

> "a usu. pecuniary charge imposed by legislative or other public authority upon persons or property for public purposes : a forced contribution of wealth to meet the public needs of a government."

*Webster's* at 2345. *Black's* defines "tax" as:

> "A monetary charge imposed by the government on persons, entities, transactions, or property to yield public revenue. Most broadly, the term embraces all governmental impositions on the person, property, privileges, occupations, and enjoyment of the people, and includes duties, imposts, and excises. Although a tax is often thought of as being pecuniary in nature, it is not necessarily payable in money."

*Black's* at 1496.

Those meanings of "tax" show that, although monetary in nature, a tax need not be paid in cash. That understanding is consistent with the pertinent statutory context. As the department concedes, tax credits are allowed against the regular corporate excise tax liability imposed by ORS 317.070, and the phrase "shall annually pay to this state * * * an excise tax" in ORS 317.070 is materially indistinguishable from the phrase "shall pay annually to this state * * * an excise tax" in ORS 317.090(2). Thus, we conclude that the legislature did not intend, by its use of the term "tax" in ORS 317.090(2), to require that the minimum tax imposed by that statute be paid in cash.

For the foregoing reasons, the Tax Court did not err in concluding that the taxpayer was entitled to satisfy its obligation to pay annually to the state the $75,000 corporate minimum tax under ORS 317.090(2) by applying a BETC credit under ORS 315.354 in that amount on its 2009 corporate excise tax return.

The judgment of the Tax Court is affirmed.