No. 929 December 26, 2024 67

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Greg KUPILLAS,
Malia Kupillas, and Clackamas County,
*Respondents,*

*v.*

SAGE AND SOCIAL LLC,
*Petitioner.*

Land Use Board of Appeals
2024015; A185028

Submitted September 24, 2024.

Damien R. Hall, Nikesh J. Patel, and Dunn Carney Allen Higgins & Tongue, LLP, filed the brief for petitioner.

Micheal M. Reeder filed the brief for respondents Greg Kupillas and Malia Kupillas.

No appearance for respondent Clackamas County.

Before Tookey, Presiding Judge, Kamins, Judge, and Armstrong, Senior Judge.

KAMINS, J.

Reversed and remanded.

**KAMINS, J.**

Intervenor-Respondent Sage and Social, LLC (intervenor) appeals a Land Use Board of Appeals (LUBA) order remanding a decision by Clackamas County which, among other things, granted intervenor a conditional use permit to operate an event venue in an existing barn on their property. In its sole assignment of error, intervenor contends that LUBA erred in determining that ORS 215.760(2), a land use statute that prohibits changing the use of exempt agricultural buildings in mixed forest zones, prohibited intervenor from ever changing the original use of the barn. After examining the text, context, and legislative history of ORS 215.760(2), we conclude that the legislature did not intend such a result. Accordingly, we reverse and remand for further proceedings consistent with this decision.

We state the facts briefly. Intervenor runs a business on a 20-acre plot of land in unincorporated Clackamas County in a mixed Agricultural/Forest (AG/F) zone. As part of that business, intervenor operates a Christmas tree farm and small flower farm. In 2023, intervenor wanted to expand its business to host events on their farm. In furtherance of that goal, intervenor applied for a conditional use permit to operate a home occupation business. Under the County's Zoning and Development Ordinance (ZDO), a home occupation business is an allowable conditional use for intervenor's property in this zone.

The property contains two buildings: a single-family home and a 3,000-square-foot barn. The barn was authorized in 2020 as an agricultural building used for storing farm equipment and is thus exempt from the requirements of the Oregon Structural Specialty Code (OSSC, also known as the building code). ORS 455.315. In its 2023 application, intervenor indicated wanting to use the barn to host wedding receptions and ceremonies. Intervenor proposed constructing additional buildings and facilities in conjunction with its application, or, in the alternative, building a new structure with temporary tents to accommodate its business.

Intervenor's neighbors, petitioners at LUBA below, opposed intervenor's application on several grounds, including

that, according to them, ORS 215.760 prevents intervenor from changing the use of their agricultural building.

ORS 215.760 permits agricultural buildings "customarily provided in conjunction with farm use or forest use" as an allowable use in forest zones and AG/F zones, ORS 215.760(1). And ORS 215.760(2) prohibits a person from "convert[ing] an agricultural building authorized by [ORS 215.760] to another use."

ORS 455.315(2)(a)(A) provides the definition for "agricultural building." More precisely, an agricultural building is defined by its use, and, as relevant here, includes structures "located on a farm or forest operation and used for *** [s]torage, maintenance or repair of farm or forestry machinery and equipment." ORS 455.315(2)(a)(A)(i).[1] Agricultural buildings are also exempt from the requirements of the Building Code. ORS 455.315(1).[2]

After a public hearing, the county hearings officer approved intervenor's application, subject to several conditions. Of note to this appeal, one condition required intervenor to obtain a building permit for the barn, to bring it in compliance with the building code. With regard to ORS

---

[1] In addition to equipment storage, other uses of agricultural buildings include:

"(ii) The raising, harvesting and selling of crops or forest products;

"(iii) The feeding, breeding, management and sale of, or the produce of, livestock, poultry, fur-bearing animals or honeybees;

"(iv) Dairying and the sale of dairy products; or

"(v) Any other agricultural, forestry or horticultural use or animal husbandry ***."

ORS 455.315(2)(a)(A). Dwellings or structures used by the public do not qualify as agricultural buildings. ORS 455.315(2)(a)(B). In addition to the enumerated uses, an agricultural building may be used for other uses if those uses:

"(a) Are incidental and accessory to the uses listed in subsection (2)(a)(A) of this section;

"(b) Are personal to the farm owner and the farm owner's immediate family or household; and

"(c) Do not pose a greater hazard to persons or property than the uses listed in subsection (2)(a)(A) of this section."

ORS 455.315(4).

[2] ORS 455.315(1) states: "The provisions of this chapter do not authorize the application of a state structural specialty code to any agricultural building, agricultural grading, equine facility or dog training facility."

215.760, the hearings officer interpreted the statute and determined that a literal application would produce unreasonable results. In particular, the hearings officer noted that "ORS 215.760(2) clearly prohibits any non-agriculture or timber use of the existing barn if ORS 215.760(1) were the only way to legally construct the existing barn on the site." However, given that there were alternative permissible ways to construct the barn,[3] the officer concluded that ORS 215.760 did not prohibit intervenor's plans for the building, because, if intervenor obtained a building permit for the existing barn, it would no longer constitute "[a]n agricultural building authorized by [ORS 215.760]," and ORS 215.760(2) would no longer apply. Finally, the hearings officer concluded that construing ORS 215.760 to prohibit all changes to the existing structure's use would lead to an absurd result, because it would force the applicants to permanently cease all non-agricultural use of the existing barn, but also allow them to demolish the building and construct an identical new one in its place.

Petitioners appealed to LUBA. At LUBA, petitioners argued that the hearings officer misapplied *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009), by jumping to the "absurd results" canon without first determining that an ambiguity existed from the text, context, and legislative history of the statute. Petitioners also contended the result of ORS 215.760(2) was not absurd, but reflective of Oregon's state-wide planning system's goals of preserving rural land for farm and forest uses. Finally, petitioners argued that the hearings officer's interpretation would render ORS 215.760(2) meaningless, because there already were existing prohibitions on converting an agricultural building to uses not allowed. Intervenor responded that the hearings officer correctly construed the statute.

LUBA agreed with petitioners that ORS 215.760 prohibited intervenor from ever changing the use of their barn. LUBA first interpreted the text and context of the statute and concluded that the hearings officer impermissibly added qualifying language; namely, revising the statute

---

[3] The county's ZDO, for example, allows for "[u]ses and structures customarily accessory and incidental to a dwelling" and "[h]ome occupation to host events," as acceptable uses in AG/F zones.

to prohibit a person from converting "an agricultural building authorized by ORS 215.760 to another use, *unless a person later obtains building permit approval for another use*." LUBA Order at 11 (citing ORS 174.010 (providing that, in the construction of a statute, we shall not "insert what has been omitted") (emphasis in original)).

LUBA also turned to legislative history, relying on comments from lawmakers that the buildings wouldn't be used for non-farm or forest related activities to determine that the legislature intended to prohibit those structures from ever being converted to another use.

## BACKGROUND

We begin with a brief overview of the law as it relates to exempt "agricultural buildings."

Since at least 1969, nonresidential "buildings customarily provided in conjunction with farm use" have been allowed in exclusive farm use (EFU) zones. ORS 215.213 (1)(e); ORS 215.283(l)(e); *see Brentmar v. Jackson County*, 321 Or 481, 496, 496 n 10, 900 P2d 1030 (1995) (uses authorized in ORS 215.213(1) and ORS 215.283(1) are allowed "as of right"); Or Laws 1969, ch 258, § 1 (adding "other buildings customarily provided in conjunction with farm use" to the list of allowed nonfarm uses in ORS 215.213).

In 1975, the legislature first exempted from the building code regulation agricultural buildings "located on a farm." *Former* ORS 456.758 (1975), Or Laws 1975, ch 646, § 2, *renumbered as* ORS 455.315 (1987). The structures listed at ORS 455.315, including agricultural buildings, are referred to colloquially as "exempt structures," because they can be constructed without building permits. As previously mentioned, the agricultural building exemption is defined by the use—not the nature or character—of the structure. *See* ORS 455.315(2)(a)(A) and (B) (listing uses that are and are not within the agricultural building exemption). The list of uses within the agricultural building exemption is a subset of the broader set of "farm uses" as defined at ORS 215.203(2)(a). Said another way, there are many allowed uses of buildings customarily provided in conjunction with farm

use, but only the uses listed at ORS 455.315 are allowed in an exempt structure.

As mentioned, exempt agricultural buildings are allowed, as a matter of right, in EFU zones. Prior to 2013, however, there was no statutory right to an exempt building in *non*-EFU agricultural zones, like forest zones or AG/F zones. By rule, all uses allowed in EFU zones are allowed in mixed AG/F zones, *see* OAR 660-006-0050(2) (so stating); however, just because counties *could* allow exempt structures in AG/F or forest zones, there was no guarantee that counties *would* allow them, as a matter of right. Additionally, such structures would not be exempt from the building code. This uncertainty made building these types of structures on woodlots more difficult than siting them on farms, because siting such structures in forest zones required land use and building permit review and approval.

House Bill (HB) 2441 (2013), the bill that would eventually require the allowance of exempt buildings in forest and AG/F zones, sought to address that concern. At the request of the Oregon Small Woodlands Association (OSWA), HB 2441 redefined an exempt "agricultural building" under ORS 455.315(2)(a) to include structures "located on a farm *or forest operation*," and added forestry uses as additional allowable uses. HB 2441, §§ 2-3 (emphasis added). HB 2441 Section 2 became what is now ORS 215.760, the forest zone agricultural building exemption. Specifically, HB 2441 Section 2 requires counties to allow "agricultural buildings * * * customarily provided in conjunction with farm use *or forest use*" outright in forest and mixed farm and forest zones. *Codified at* ORS 215.760(1) (emphasis added).

## ANALYSIS

We review LUBA's order to determine whether it is "unlawful in substance or procedure[.]" ORS 197.850(9)(a). "A LUBA order is unlawful in substance if it represent[s] a mistaken interpretation of the applicable law." *Kine v. Deschutes County*, 313 Or App 370, 372, 496 P3d 1136, *rev den*, 369 Or 69 (2021) (citation and internal quotation marks omitted). We review LUBA's construction of statutes for legal error, under the methodology of *Gaines*, 346 Or at 171-73, and *PGE*

*v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). *See 1000 Friends of Oregon v. Clackamas County*, 309 Or App 499, 504, 483 P3d 706, *rev den*, 368 Or 347 (2021) (reviewing LUBA's construction of ORS 215.448).

ORS 215.760, in full, provides:

"(1) An agricultural building, as defined in ORS 455.315, customarily provided in conjunction with farm use or forest use is an authorized use on land zoned for forest use or for mixed farm and forest use.

"(2) A person may not convert an agricultural building authorized by this section to another use."

On appeal, the parties disagree on the proper definition of the phrase "authorized by this section" in ORS 215.760(2). Petitioners contend that the phrase refers to exempt agricultural buildings located on forest or AG/F zones by virtue of ORS 215.760(1), and that those buildings must stay in their original use in perpetuity. Intervenor, on the other hand, argues that ORS 215.760(2) applies only to exempt agricultural buildings, but does not apply to buildings that are subsequently improved to meet building code requirements.

Our goal in interpreting statutes is to discern the legislature's intent. *Gaines*, 346 Or at 170; *see also* ORS 174.020(1)(a) ("In the construction of a statute, a court shall pursue the intention of the legislature if possible."). We first examine the text and context of a law. *Gaines*, 346 Or at 171 (citing *PGE*, 317 Or at 610-11). We then consider the pertinent legislative history, which we consult if it "appears useful to [our] analysis" and determine its "evaluative weight." *Id.* at 172. Finally, "[i]f the legislature's intent remains unclear after examining text, context, and legislative history, [we] may resort to general maxims of statutory construction to aid in resolving the remaining uncertainty." *Id.*

We begin with the text. *Id.* at 171. Again, ORS 215.760(2) provides that "[a] person may not convert an agricultural building authorized by this section to another use." The statute does not define "authorized," so we may resort to dictionary definitions in order to give words their "plain, natural, and ordinary meaning." *PGE*, 317 Or at 611.

"Authorized" is the past tense of the word "authorize," which has several meanings, but appears here to mean "to endorse, empower, justify, or permit by or as if by some recognized or proper authority (such as custom, evidence, personal right, or regulating power): SANCTION." *Webster's Third New Int'l Dictionary* 146 (unabridged ed 2002).

"Agricultural building" is defined by reference to ORS 455.315, which exempts certain nonresidential structures located on a farm or forest operation from the OSSC depending on their use. *See* ORS 455.315(2)(a)(A) (listing uses, including "[s]torage *** of farm or forest machinery and equipment"). "Convert" means "to change from one use, purpose, or function to another." *Webster's* at 499.[4]

Thus, the plain text of the statute appears to prevent property owners from changing the use of agricultural buildings permitted by ORS 215.760 and exempt from the building code. However, the statute remains silent to the situation at hand: that is, whether ORS 215.760 prohibits, in perpetuity, changing the use of agricultural buildings that are *no longer exempt* from the building code, because the owner no longer wishes to use that exemption.

The statutory context also illustrates the statute's main purpose: to provide easier avenues for landowners in forest and AG/F zones to build agricultural buildings on their land. *See Gaines*, 346 Or at 171 (reviewing court looks at text and context together). As noted in the overview above, the statute is situated in the context of similar statutes which serve to make constructing agricultural buildings—especially structures used for storage, maintenance, or repair of equipment—easier in EFU, forest, and AG/F zones.

The legislative history confirms that the legislature intended the law to benefit forest landowners. As we

---

[4] On appeal, intervenor raises a new argument: its proposed use, which would be limited to 52 events per year, is also insufficient to constitute a "conver[sion]" of the use of the property, for the purposes of ORS 215.760. However, because intervenor did not raise that argument below at LUBA in its briefs or at argument, we do not consider it here. *Haugen v. City of Scappoose*, 330 Or App 723, 729, 545 P3d 760 (2024). In any event, even if petitioner's argument was preserved, because we conclude that ORS 215.760 does not apply to intervenor's barn, we would not need to reach the issue of whether the proposed change is sufficient to "convert" the use.

previously explained, ORS 215.760 was enacted as part of House Bill 2441, which expanded the definition of exempt agricultural buildings from only farm buildings to include buildings associated with forest use, as well as buildings located in forest and AG/F zones. At public hearings on the bill, testimony reflected an additional goal of the law: to create equality between landowners in agricultural zones, who already could build agricultural buildings "as of right," and landowners in forest zones or mixed zones, who could not. *See* Audio Recording, House Committee on Land Use, HB 2441, Feb 7, 2013, at 17:16 (comments of Roger Beyer, OSWA), https://olis.oregonlegislature.gov (accessed Dec 2, 2024) ("What we are asking for is parity with ag buildings."); *see also* Audio Recording, Senate Committee on Rural Communities and Economic Development, HB 2441, Apr 17, 2013, at 28:36 (comments of Jim James, Executive Director, OSWA), https://olis.oregonlegislature.gov (accessed Dec 2, 2024) ("We believe that this bill gives equity to forest land owners, the same advantage that agricultural land owners have."); *id.* at 36:25 (comments of Gordon Culbertson) ("Agriculture and forestry are very much the same process *** . Each requires an investment in tools of the trade to be successful. A reasonable expectation is that similar business endeavors would be treated equally.").

But while HB 2441 added a restriction on converting authorized agricultural buildings in forest zones to different uses, it created no comparable restriction for agricultural buildings in EFU zones. In fact, no comparable restriction exists. Petitioners' proposed interpretation, which would broadly restrict forest zone landowners from ever changing the original use of their exempt building, would once again create an inequitable situation, in which forest zone landowners are treated more harshly than landowners in EFU zones.

More importantly, there is no support in the legislative history for the interpretation that an agricultural building "authorized by this section" would require the exempt building to remain exempt in perpetuity. In fact, the legislative discussion reflects the opposite: some legislators recognized that attempts to change the building's use could and would occur. During the Senate Committee on Rural

Communities and Economic Development, Senator Ginny Burdick asked the following question:

> "I could see a situation where you start out with one type of building, then end up with another use that is not contemplated. What protections are there to keep it from becoming a condo?"

Audio Recording, Senate Committee on Rural Communities and Economic Development, HB 2441, Apr 23, 2013, at 39:31, https://olis.oregonlegislature.gov (accessed Dec 2, 2024).

In response to Senator Burdick's question, Mark Long, the Administrator of the Building Codes Division of the Department of Consumer and Business Services (DCBS), explained the protections: the applicant would need to go through building codes, get permits for that use, and meet full compliance.

> "Mark Long:   I believe the question was, if the building goes in, as an exempt structure, then what happens if they change the use to something else, condos, etc. They'd have to come to the building codes, local building codes department or to the state, depending on where it is at, and get permits for that use, get land use planning and approval for that use and go through the regular process. We would require the structure to meet full compliance, just like any other structure would if it was authorized in that area. I would imagine that you would have a land use problem though, to begin with.

> "Senator Arnie Roblan:   Yeah, I would say you have a big land use problem [laughter][.]

> "Mark Long:   Another check and balance there."

*Id.* at 42:54.

Of note, no one responded that HB 2441 would completely restrict any exempt structure from changing to a non-exempt structure. Administrator Long correctly noted that there would be hurdles to obtaining approval to convert an exempt structure to condos, not that such an endeavor was simply unavailable.

LUBA, however, relied on the comments of Roger Beyer, a representative of OSWA, to determine that the

legislature intended to prohibit any change to an agricultural building. Beyer testified on the prohibition on converting an exempt building:

> "[W]e added this, in the house side, that a person may not *** convert an agricultural building authorized by this section to another use. *** And my understanding of what that means, if a person wants to convert it to another use, they can't. *But *** if they even want to apply, they strictly have to go back to the land use process.* But I think this is pretty clear that it wouldn't be allowed."

*Id.* at 43:50 (emphasis added).

In fact, Beyer's comments reinforce our interpretation: put differently, "if a person wants to convert [an exempt structure] to another use, they can't," but there is nothing preventing a person from choosing to "go back to the land use process" and *subject* their structure to the OSSC. Such a structure would not be "authorized by ORS 215.760," because ORS 215.760 only authorizes exemptions to the building code.

We understand, from the statutory scheme as a whole, the legislature's intent here to be unambiguous—namely, that the legislature did not intend to prohibit landowners with agricultural buildings no longer exempt from the building code from ever changing those buildings' use. But to the extent any ambiguity exists, we must interpret the statute to avoid an absurd result. *Schutz v. La Costita III, Inc.*, 256 Or App 573, 583, 302 P3d 460, *rev den*, 354 Or 148 (2013); *Con-Way Inc. & Affiliates v. Dept. of Rev.*, 353 Or 616, 620, 302 P3d 804 (2013) (construing courts "resolve any ambiguity by applying well-established canons of statutory construction"). Avoiding absurd results is a maxim of statutory construction that courts use "when the statute is truly ambiguous *and* the result is truly absurd." *LandWatch Lane County v. Lane County*, 364 Or 724, 741, 441 P3d 221 (2019) (emphasis in original). Here, the result of petitioners' proposal is absurd: it would require intervenor to either cease all nonagricultural use of its property or tear its barn down and construct *an identical building* in its place. The legislature could not have intended such a result.

In sum, ORS 215.760 serves as an important check to prevent a landowner from altering the use of an exempt agricultural building in forest and AG/F zones. However, it is not so broad as to prevent landowners who wish to improve their property by bringing their buildings up to code from ever changing the use of those building. Such buildings would not be "authorized by [ORS 215.760]," and are thus not subject to its provisions.

Reversed and remanded.