IN THE OREGON TAX COURT
REGULAR DIVISION
Income Tax

| | | |
|---|---|---|
| WARREN C. DERAS, | ) | |
| | ) | |
| Plaintiff, | ) | **TC 5477 (Control); TC 5483** |
| v. | ) | |
| | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| State of Oregon, | ) | |
| | ) | |
| Defendant. | ) | **ORDER ON SUMMARY JUDGMENT** |

## I.    INTRODUCTION

In these consolidated personal income tax cases, Plaintiff argues that Oregon is prohibited from including federally taxable social security benefits or the interest on federal debt obligations when setting the threshold level of income that is used to "phase out" a taxpayer's eligibility for certain personal income tax subtractions and credits.

As to the inclusion of social security benefits, Plaintiff relies on Article IX, Section 9 of the Oregon Constitution, which provides:

> "Benefits payable under the federal old age and survivors insurance program or benefits under section 3(a), 4(a) or 4(f) of the federal Railroad Retirement Act of 1974, as amended, or their successors, shall not be considered income for the purposes of any tax levied by the state or by a local government in this state. *Such benefits shall not be used in computing the tax liability of any person under any such tax.* Nothing in this section is intended to affect any benefits to which the beneficiary would otherwise be entitled. This section applies to tax periods beginning on or after January 1, 1986."

Or Const, Art IX, § 9 (Article IX, Section 9) (emphasis added).[1]

---

[1] Unless otherwise indicated, (1) references to the Oregon Constitution and the Oregon Revised Statutes (ORS) are to the 2023 editions; and (2) references to the "IRC," or to the "Code," are to the Internal Revenue Code of 1986, as amended and in effect for 2023.

As to the inclusion of interest on federal debt obligations, Plaintiff relies on a federal statute that provides:

> "(a) Stocks and *obligations of the United States Government are exempt from taxation by a state or political subdivision of a state. The exemption applies to each form of taxation that would require the obligation, the interest on the obligation, or both, to be considered in computing a tax*, except--
>
> "(1) a nondiscriminatory franchise tax or another nonproperty tax instead of a franchise tax, imposed on a corporation; and
>
> "(2) an estate or inheritance tax.
>
> "(b) The tax status of interest on obligations and dividends, earnings, or other income from evidences of ownership issued by the Government or an agency and the tax treatment of gain and loss from the disposition of those obligations and evidences of ownership is decided under the Internal Revenue Code of 1986 (26 U.S.C. 1 et seq.). An obligation that the Federal Housing Administration had agreed, under a contract made before March 1, 1941, to issue at a future date, has the tax exemption privileges provided by the authorizing law at the time of the contract. This subsection does not apply to obligations and evidences of ownership issued by the District of Columbia, a territory or possession of the United States, or a department, agency, instrumentality, or political subdivision of the District, territory, or possession."

31 USC § 3124 (the federal exempt interest statute) (emphasis added).

Defendant argues that including social security benefits and the interest on federal debt obligations in Oregon's phase-out thresholds does not violate either provision. The court is not aware of any Oregon cases on point as to either issue. The parties have stipulated to the relevant facts and present the issues on cross-motions for summary judgment.

The court agrees with Plaintiff. For each of the tax years 2023 and 2024, Plaintiff had social security benefits and interest on federal debt obligations that were included in his adjusted gross income (AGI) under federal law. He was affected by three of Oregon's statutes that use AGI as a component of formulas to phase out subtractions[2] and credits. *See* ORS 316.695(3)

---

[2] Oregon law uses the term "subtraction" in the same way federal tax law uses the term "deduction": to describe allowable reductions of taxable income. *See* IRC § 161 (allowance of deductions); ORS 316.680 ("There shall be subtracted from federal taxable income [lists subtractions].").

(subtraction for federal tax liability); ORS 316.693(3) (subtraction for medical expenses); ORS 316.085(5) ("personal exemption" credit). As a result, Plaintiff had greater Oregon personal income tax liability than he would have had if his social security benefits and interest on federal debt obligations had not been included in AGI.

The court concludes that the inclusion of social security benefits in these three statutes violates the plain text of the second sentence of Article IX, Section 9 (emphasized above) by "us[ing]" the benefits in "computing" Plaintiff's "tax liability." This interpretation is consistent with uses of the same key terms in other statutes as of the 1986 passage of Article IX, Section 9, and with the United States Supreme Court's then-recent interpretation of the similar provision in the federal exempt interest statute. The court finds no inconsistency with the May 1986 voter pamphlet and a contemporaneous newspaper editorial, because neither of those sources of context addresses the inclusion of social security benefits in phase-outs or other formulas. Those materials address only the subtraction of social security benefits from federal taxable income, which is not at issue in this case. The same is true of the legislative history of the 1985 resolution and bill that, respectively, referred and implemented what became Article IX, Section 9; the court has found no mention of the prohibition against using social security benefits in computing tax liability.

As further context, at least eight other statutory formulas referring to AGI (or directly to social security benefits) to potentially increase or decrease Oregon tax liability were in place in 1985 when the legislature voted on the referral, and because there was no special session during the 1985-87 biennium, those same formulas were in place in 1986 when the voters approved Article IX, Section 9. Legislators are deemed to have been aware of these formulas, and a colloquy in the legislative history of a wide-ranging 1985 "reconnect" bill indicates that

legislators were specifically aware that including social security benefits in AGI could affect tax liability, although nothing in the colloquy addresses whether or how the potential referral and passage of Article IX, Section 9 would affect that inclusion. While the pre-existing formulas and the colloquy are some evidence that the legislature itself may have believed that the second sentence of Article IX, Section 9 does not prohibit the inclusion of social security benefits in phase-out formulas, the court finds any such belief to be in conflict with the plain text. And even if legislators had that belief, the court sees no basis to impute it to the voters. Voters may have read the plain text of Article IX, Section 9 as a prohibition against new phase-outs that increase tax liability based on social security benefits, and as a directive to undo existing ones. The fact that the legislature, in the 1987 session and in later years, went on to enact more such phase-outs is not relevant as context to discern the intention of the voters in May 1986. Overall, what context exists either supports the court's reading of the plain text, is neutral, or deserves little weight compared to the text.

As to the inclusion of interest on federal debt obligations in the three AGI-based phase-out formulas at issue, the court readily concludes that the three Oregon statutory formulas are prohibited under the federal exempt interest statute as interpreted by the United States Supreme Court in *American Bank & Trust Co. v. Dallas County*, 463 US 855, 862-67, 103 S Ct 3369, 77 L Ed 2d 1072 (1983) (invalidating Texas property tax imposed on the value of a bank's net assets, without any deduction for tax-exempt United States obligations held by the bank; declaring that "Congress intended to sweep away formal distinctions and to invalidate all taxes measured *directly or indirectly* by the value of federal obligations, except those specified in the amendment") (emphasis added). Although the case involved a property tax, the analysis in *American Bank & Trust* includes the legislative history, which indicates that Congress intended

the exemption to apply when computation of a net income tax requires consideration of interest income from holding federal obligations. *See id.* at 865-66. This court also finds persuasive the reasoning of the Montana Supreme Court in a net income tax case invalidating the use of exempt interest in a formula that limited the taxpayer's otherwise allowable deductions. *See Schwinden v. Burlington Northern, Inc.*, 213 Mont 382, 691 P2d 1351 (1984).

## II. FACTS; APPLICATION OF PHASE-OUT STATUTES AT ISSUE

Case No. TC 5477 involves tax year 2023; Case No. TC 5483 involves tax year 2024. Except as described, the facts and relevant law as to each year are materially the same.[3] Plaintiff, a full-time Oregon resident with the "filing status" of a person who was single, or married but filing a separate return, had both social security benefits and interest from federal debt obligations. He first filed an original Oregon Individual Income Tax Return for Full-year Residents (Form OR-40), following the instructions as described below, and paid the amount shown as owing. He later filed an amended return for each tax year, claiming a refund based on the position he takes in this case.

The court sets forth the remaining relevant facts by describing, in sequence, the entries Plaintiff made on the relevant lines of his Oregon personal income tax returns, with references identifying the laws involved.

A. *2023 Original Oregon Return on Form OR-40 (2023 Stip Ex 1)*

- *AGI; ORS 316.013.*[4] Line 7 of the original Form OR-40 directed Plaintiff to fill in the "amount of federal adjusted gross income from federal Form 1040, * * * line 11." (2023

---

[3] For this reason, the court refers to the consolidated cases collectively as "this case," except when discussing topics specific to one of the tax years.

[4] ORS 316.013 provides in full:

"Unless the context requires otherwise and notwithstanding ORS 316.012, whenever, in the calculation of Oregon taxable income, reference to the taxpayer's federal adjusted gross income is required

Stip Ex 1 at 3.) It is undisputed that Plaintiff's AGI by definition included that portion of his social security benefit that was subject to federal income tax, as well as all of his interest on federal debt obligations. Both of those items are to be fully subtracted on lines 11 and 13 (see below) as part of the computation of "Oregon taxable income" on line 19. Plaintiff filled in his AGI, which exceeded $125,000. (*See Id.*) His social security benefit exceeded $25,000; his interest from federal debt obligations was less than $25,000. (*See id.*)

- *Phased-out subtraction for federal tax liability (ORS 316.695(3)[5]).* Line 10 of the original Form OR-40 directed Plaintiff to fill in, as a subtraction, his "2023 federal tax liability (see instructions)." (2023 Stip Ex 1 at 3.) The instructions for line 10 directed a person having Plaintiff's filing status and AGI of $125,000 to $130,000 to enter a maximum amount of $6,250. Department of Revenue 2023 Form OR-40 Instructions at 14 (Table 4), *available at* [*2023 Publication OR-40-FY, Oregon Income Tax Full-Year Resident Forms and Instructions, 150-101-040-1*]. In compliance with the instructions, Plaintiff entered $6,250. (*See* 2023 Stip Ex 4.) If Plaintiff's Social Security income were deducted from AGI, he would be entitled to the highest maximum subtraction of $7,800. *See* Department of Revenue 2023 Form OR-40 Instructions at 14 (Table 4) (showing $7,800 maximum subtraction for single filer with an AGI of at least $0 and less than $125,000).

- *Full subtraction for federally taxable social security benefit (ORS 316.054).[6]* Line 11 directed Plaintiff to fill in his "Social Security amount," to the extent reported as "taxable" on line 6b of his federal return.[7] Plaintiff did so. (2023 Stip Ex 1 at 3, 15.)

---

to be made, the taxpayer's federal adjusted gross income shall be as determined under the provisions of the Internal Revenue Code as they may be in effect for the tax year of the taxpayer without any of the additions, subtractions or other modifications or adjustments required under this chapter and other laws of this state applicable to personal income taxation."

[5] ORS 316.680(1)(b) generally allows an individual taxpayer to subtract from federal taxable income the "amount of any federal income taxes accrued by the taxpayer during the taxable year as described in ORS 316.685," less certain refunds. ORS 316.685 provides computation rules. However, ORS 316.695(3) caps the amount of the subtraction by requiring the taxpayer to add back federal taxes in excess of a specified dollar amount. In a series of graduated steps, that specified dollar amount declines as federal adjusted gross income increases. The result is that the subtraction for federal income taxes accrued is gradually eliminated for taxpayers whose federal adjusted gross income is $125,000 ($250,000 for married taxpayers filing jointly) to $145,000 ($290,000). The specified dollar amounts are indexed for inflation. *See* ORS 316.695(3)(f).

[6] ORS 316.054 provides:

"In addition to the other modifications to federal taxable income contained in this chapter, there shall be subtracted from federal taxable income the amount of any Social Security benefits, as defined in section 86 of the Internal Revenue Code (Title II Social Security or tier 1 railroad retirement benefits) included in gross income for federal income tax purposes under section 86 of the Internal Revenue Code."

[7] The parties refer to this amount as Plaintiff's social security benefit, and the court adopts that term.

- *Full subtraction for interest on federal debt obligations (ORS 316.680(1)(a).[8]* Line 13 directed Plaintiff to enter the total amount of all his other Oregon "subtractions" as itemized on line B7 of a schedule labeled Schedule OR-ASC. (2023 Stip Ex 1 at 3.) Plaintiff entered solely the amount of his interest on federal debt obligations, identified with Defendant's numeric code 331, which represents "U.S. government interest in IRA or Keogh distributions." *See* 2023 Schedule OR-ASC and OR-ASC-NP Instructions at 1, *available at* 2023 Instructions for Schedules OR-ASC and OR-ASC-NP, 150-101-063-1 (referring to numeric codes listed in Defendant's publication OR-CODES); Publication OR-CODES at 2, available at Publication OR-CODES, Numeric Codes for Oregon Adjustments, Additions, Subtractions, Modifications, and Credits, 150-101-432.

- *Phased-out subtraction for medical expenses (ORS 316.693(3)[9]).* The instructions for schedule OR-ASC state, for a person having Plaintiff's single filing status, that the "maximum allowable medical subtraction" was $0 if AGI was $100,001 or more. 2023 Schedule OR-ASC and OR-ASC-NP Instructions at 3 (Table 1). Plaintiff entered no amount attributable to medical subtractions on line 13 of his Form OR-40 or on line B7 of Schedule OR-ASC, although he had incurred $1,000 in medical expenses that would have been eligible for the subtraction, but for the AGI-based maximum. (*See* 2023 Stip Ex 4.)

- *Phased-out personal exemption credit (ORS 316.085(5)[10]).* Line 25 of the original Form OR-40 directed Plaintiff as follows: "Exemption credit. If the amount on line 7 is

---

[8] ORS 316.680(1)(a) provides:

"(1) There shall be subtracted from federal taxable income:
"(a) The interest or dividends on obligations of the United States and its territories and possessions or of any authority, commission or instrumentality of the United States to the extent includable in gross income for federal income tax purposes but exempt from state income taxes under the laws of the United States. However, the amount subtracted under this paragraph shall be reduced by any interest on indebtedness incurred to carry the obligations or securities described in this paragraph, and by any expenses incurred in the production of interest or dividend income described in this paragraph to the extent that such expenses, including amortizable bond premiums, are deductible in determining federal taxable income."

[9] ORS 316.693(1)(a) generally allows an individual taxpayer over a certain age to subtract from federal taxable income "the amount paid for medical care" to the extent not compensated by insurance, up to $1,800. However, for a single individual ORS 316.693(3) reduces the cap from $1,800 to $1,400 if the adjusted gross income of the individual is $25,000 or more; to $1,000 if the adjusted gross income of the individual is $50,000 or more; and to zero if the adjusted gross income of the individual is $100,000 or more. (Different dollar limitations apply depending on the taxpayer's filing status.)

[10] ORS 316.085(1) generally allows a "personal exemption credit" of $90 (indexed for inflation pursuant to ORS 316.085(4)) multiplied by the number of "personal exemptions" allowed under IRC § 151. However, ORS 316.085(5) provides that "a taxpayer may not claim the personal exemption credit * * * if the taxpayer's federal adjusted gross income for the tax year exceeds * * * $100,000 for an individual" filing as a single individual or as married filing separately.

$100,000 or less, multiply your total exemptions on line 6e by $236. Otherwise, see instructions." The instructions state: "If your federal AGI is more than $100,000 and your filing status is single or married filing separately * * * enter 0 * * *." 2023 Form OR-40 Instructions at 17. Plaintiff entered no amount of exemption credit on line 25 of his Form OR-40; but for the fact that his AGI was more than $100,000, he would have been eligible for an exemption credit of $236. (*See* 2023 Stip Ex 4.)

B.      *2023 Amended Return*

On his amended return for 2023, Plaintiff included a narrative statement explaining his position that his AGI should be reduced by excluding the amount of his 2023 social security benefits and the amount of his interest from federal debt obligations, and that the result of that change is to render him eligible for a greater subtraction for federal tax liability (line 10), a medical expense subtraction (line 13), and an exemption credit (line 25) that together reduce his Oregon income tax liability by $459, the amount of his claimed refund for 2023. (*See* 2023 Stip Ex 3 at 14-17 (narrative); 2023 Stip Ex 4 (table of computations).)

C.      *2024 Original and Amended Returns*

Similar to his process for 2023, Plaintiff first filed an original Oregon return for 2024 that used his actual AGI, then later filed an amended return with a narrative statement explaining his position that his AGI should be reduced by the amount of his 2024 social security benefits and the amount of his interest from federal debt obligations, and that the result of that change is to render him eligible for a greater subtraction for federal tax liability (line 10), a medical expense subtraction (line 13), and an exemption credit (line 25) that together reduce his Oregon income tax liability by $770, the amount of his claimed refund for 2024. (*See* 2024 Stip Ex 7 at 8, 15; 2024 Stip Ex 9.)

D.    *Comparison of 2023 and 2024 Refund Claims*

The parties agree that the facts for tax year 2023 and 2024 give rise to the same legal issues.  (*See* Joint Mot Consolidate at 1; Joint Pet Spec Des at 1-2.) The parties also agree that, for tax year 2023 only, the federal interest issue is moot if the social security issue is decided in Plaintiff's favor, because, based on the amounts involved, in that event the further reduction of Plaintiff's AGI to account for exclusion of the federal interest income would not entitle Plaintiff to any additional subtraction or credit amounts.  (*See* Ptf's 2023 Mot Summ J at 2; Ptf's 2024 Mot Summ J at 1.)

E.    *Procedural Facts*

As to each of the two tax years, Defendant denied the refund and Plaintiff appealed in the Magistrate Division.

As to tax year 2023 (Case No. TC 5477), Plaintiff and Defendant filed a petition to specially designate the case for hearing in this division.  In May 2025, the court heard oral argument on the parties' cross-motions for summary judgment in that case.

As to tax year 2024, Plaintiff filed his complaint in the Magistrate Division in July 2025. Later that month, the court granted the parties' joint petition for special designation and joint motion for consolidation (Case No. TC 5483).  The parties cross-moved for summary judgment and filed a series of briefs generally incorporating their arguments as to tax tear 2023.  Neither party requested oral argument in the tax year 2024 case; because of the overlap in issues, the court did not request oral argument.  *See* TCR 14 F(1).

## III.    ISSUES

A.   Does Article IX, Section 9 prohibit inclusion of social security benefits in the threshold amount of income above which a personal income taxpayer becomes ineligible for all or part of a subtraction or credit that reduces the amount the taxpayer owes to the state?

B.   Does the federal exempt interest statute prohibit inclusion of interest from debt obligations of the federal government in the threshold amount of income above which a personal income taxpayer becomes ineligible for all or part of a subtraction or credit that reduces the amount the taxpayer owes to the state?

## IV.     BACKGROUND ON "TAXABLE INCOME"

Oregon personal income tax law and federal income tax law each use the same name for the tax base--"taxable income"--but with differing definitions.[11] To avoid confusion, the court refers to "Oregon taxable income" and "federal taxable income."

*Oregon taxable income.* Oregon personal income tax law imposes tax, at graduated rates, on "the entire taxable income of every resident of this state." ORS 316.037(1)(a). Under Oregon law, "'[t]axable income' means the taxable income as defined in subsection (a) or (b), section 63 of the Internal Revenue Code, with such additions, subtractions and adjustments as are prescribed by [ORS chapter 316]." ORS 316.022(6). Oregon taxable income, therefore, is federal taxable income subject to Oregon-specific modifications.

*Federal taxable income.* Similarly, federal income tax law imposes tax, at graduated rates, on the "taxable income" of an individual, a trust, or an estate. *See* IRC § 1. Under federal law, "taxable income" is determined in three steps:

1. *Add up all items of gross income.* The starting point is "gross income," generally defined as "all income from whatever source derived," but subject to numerous exclusions. IRC § 61(a); *see* IRC § 61(b) (referring to certain specifically included and excluded items).

2. *Deduct money-making expenditures to get "adjusted gross income."* AGI is gross income, less a specific set of deductions that generally are related to a trade or business or other income-producing activity of the taxpayer. *See* IRC § 62; Boris I. Bittker, et al., *Federal Income Taxation of Individuals* ¶ 21.10 (rev 2025) (Bittker on Individuals).

---

[11] By "tax base," the court means the amount that is multiplied by the percentage "rate" of tax, yielding the "tax liability" (which may be reduced, dollar for dollar, by tax "credits.") For definitions of these terms from sources contemporaneous to the Oregon laws at issue, see the Analysis section below.

3. *Deduct non-money-making items to get "taxable income," either (1) by claiming the "standard" deduction amount and a short list of specific items, or (2) by claiming a longer, "itemized," list of specific items.* The statute defining "taxable income," section 63 of the Code, allows an individual taxpayer to elect to compute taxable income in one of two ways:

   o *Standard deduction for taxpayers electing not to itemize.* Section 63(b) allows an individual taxpayer to simply deduct from AGI the standard deduction amount and any of three other specified deduction amounts for which the taxpayer is eligible.[12] For many individuals, such as those with lower amounts of charitable contributions, home mortgages, or state taxes paid, claiming the standard deduction is less time-consuming and results in a lower amount of taxable income, and thus less tax owed. *See* Bittker on Individuals at ¶ 21.10.

   o *Itemized deductions.* Section 63(a) of the Code allows an individual taxpayer who does not claim the standard deduction to itemize *all* other allowable deductions. Taxable income determined in this way thus takes into account all the money-making expenditures that result in AGI, as well as a longer list of additional deductions that are mostly unrelated to the production of income, such as charitable contributions, home mortgage interest, and state taxes paid. *See id.*

Federal taxable income and AGI are, therefore, related. A taxpayer who elects to not itemize will use AGI as the starting point from which the standard deduction and three specific deductions (but not charitable contributions, home mortgage interest, or state taxes paid) are subtracted. A taxpayer who elects to itemize will claim all the deductions that are used to determine AGI, the three specific deductions allowed to non-itemizers, and all other allowable deductions (such as charitable contributions, home mortgage interest, or state taxes paid and additional, less common deductions).

*Oregon modifications of federal taxable income.* Numerous and extensive Oregon-specific modifications convert federal taxable income into Oregon taxable income. *See, e.g.,*

---

[12] For example, Section 63(b) allows a taxpayer to deduct both the standard deduction amount and the amount of the incongruously named "personal exemption" for the taxpayer and each dependent. *See* IRC § 63(b)(2); IRC § 151 (defining "personal exemption").

ORS 316.680 to 316.859.  In fact, one trio of modifications largely undoes any direct link to federal taxable income:

1.  A taxpayer who claims the federal standard deduction must add it back in computing Oregon taxable income.  *See* ORS 316.695(1)(b).

2.  A taxpayer who itemizes deductions must add them back in computing Oregon taxable income.  *See* ORS 316.695(1)(a).

3.  After "clearing the decks" in this manner, ORS 316.695(1)(c) requires the taxpayer to subtract the greater of (1) an Oregon-specific standard deduction (which generally is lower than the federal standard deduction amount), or (2) the taxpayer's same itemized deductions that were previously added back--except that Oregon law does not allow the taxpayer to claim as a deduction the itemized Oregon income tax deducted in computing federal taxable income.

Perhaps because of the modifications under ORS 316.695(1), the Oregon personal income tax return forms have long required the taxpayer to copy not the federal taxable income amount, but rather the AGI amount from the federal return, and to then enter AGI as the starting point in computing Oregon taxable income.[13]

In this case, the parties agree that Oregon law complies in one respect with Article IX, Section 9 and the federal exempt interest statute:  Oregon law requires both social security benefits and the interest on federal debt obligations to be subtracted from "federal taxable income."  *See* ORS 316.054 (subtraction "from federal taxable income" for "any Social Security benefits * * * included in gross income for federal income tax purposes under section 86 of the Internal Revenue Code"); ORS 316.680(1)(a) (subtraction "from federal taxable income" for "interest * * * on obligations of the United States * * * to the extent * * * exempt from state income taxes under the laws of the United States").

---

[13] This is illustrated in the recitation of facts above (lines 11 and 13 of Form OR-40).  Neither party asserts that this mechanism for determining Oregon taxable income on the return results in any arithmetic difference in the computation of the assessments or the amounts Plaintiff claims as refunds.

## V. ANALYSIS

This dispute arises because the amount an Oregon taxpayer owes when filing a return is affected not only by the subtraction of items that otherwise would be counted as *components of* taxable income, but also by the gradual elimination ("phasing out") of other subtractions, modifications, or credits that otherwise would *reduce* taxable income or reduce tax liability. Some Oregon tax laws, including the three at issue in this case, refer to AGI in formulas that incrementally reduce the amount of a subtraction or credit for which a taxpayer would otherwise be eligible: the phase-out applies if the taxpayer's AGI exceeds certain statutory threshold amounts. AGI, however, generally includes a portion of social security benefits as well as the entire amount of interest on federal debt obligations, because there is no counterpart under federal law to Article IX, Section 9, and the federal exempt interest statute applies only to state and local governments. *See* IRC § 86(a) ("gross income * * * includes social security benefits" pursuant to formula); Bittker ¶ 16.5 (explaining formula for partial inclusion of social security benefits in gross income); *cf.* IRC § 103(a) ("gross income does not include interest on any *State or local* bond") (emphasis added).

As set forth in the description of the facts above, the three phase-out formulas at issue in this case are contained in (1) the subtraction for federal tax liability under ORS 316.695(3), (2) the subtraction for medical expenses under ORS 316.693(3)(b), and (3) the personal exemption credit under ORS 316.085(5).

Plaintiff argues that inclusion of his social security benefit and interest from federal debt obligations in these three phase-out formulas violates Article IX, Section 9 and the federal exempt interest statute because the end result is that his Oregon tax liability is higher than it would have been, absent those inclusions in the formulas. Defendant argues that Oregon law

does not violate either provision because Article IX, Section 9 and the federal exempt interest statute merely require Oregon to subtract social security benefits and federal debt interest from taxable income.

The court starts its analysis with Article IX, Section 9, which is directly relevant for both tax years. Based on the entries on Plaintiff's returns for tax year 2023, excluding his social security benefit alone would have sufficed to reduce his federal adjusted gross income below the threshold needed to claim the full amount of the two subtractions and the one credit at issue. The court will then analyze the parties' interpretations of the federal exempt interest statute, which is relevant for tax year 2024 because for that year the full relief Plaintiff seeks is available only if his social security income and his income from interest on federal debt obligations are both excluded from AGI.[14]

A.      *Article IX, Section 9*

To determine how Article IX, Section 9, a referred constitutional amendment, may apply to the facts in this case, the court applies the Oregon Supreme Court's framework, which "'look[s] to the text, context, and legislative history of the amendment to determine the intent of the voters.'" *AAA Oregon/Idaho Auto Source v. Dept. of Rev.*, 363 Or 411, 418, 423 P3d 71 (2018) (quoting *State v. Sagdal*, 356 Or 639, 642, 343 P3d 226 (2015)). Context "includes preexisting constitutional provisions, statutes, and case law." *Id.* The legislative history includes not only the ballot title, voter pamphlet materials, and contemporaneous news reports and

_____

[14] Addressing Article IX, Section 9 first is also consistent with the ordering of issues in the parties' briefing. However, the parties purport to base their ordering on Oregon's "first things first" principle. (*See* Ptf's 2023 Mot Summ J at 7 (citing *Deras v. Myers*, 272 Or 47, 53, 64, 535 P2d 541 (1975)); Def's 2023 Cross-Mot at 4 (citing *State v. Link*, 367 Or 625, 640, 482 P3d 28 (2021)). This order does not express a view on whether or how a first-things-first principle may apply when the state law at issue is a constitutional provision governing one tax item and the federal law at issue is a statute governing a different tax item.

editorials, *id.*, but also any records of the legislature's deliberations on the resolution that the legislature referred to the voters. *State v. Lane,* 357 Or 619, 634, 355 P3d 914 (2015). The weight a court should assign to the legislative record, or to the other enactment history, of a referred constitutional amendment, depends on "the circumstances—including the clarity with which the legislature's or the people's intentions have been expressed in the text of an enactment and the nature of the history itself." *Lane*, 357 Or at 634.

1. *Text*

The relevant text consists of the first two sentences:

> "Benefits payable under the federal old age and survivors insurance program * * * shall not be considered income for the purposes of any tax levied by the state or by a local government in this state. Such benefits shall not be used in computing the tax liability of any person under any such tax."

Article IX, Section 9.[15] The parties focus their arguments on the second sentence, which prohibits "us[ing]" social security benefits in "computing" "tax liability." The court examines the plain meaning and any technical meaning of each of these terms.

a. "Used"

The plain meaning of the verb to "use," as of the 1980s when Article IX, Section 9 was drafted and enacted, included:

> "2 : to put into action or service: have recourse to or enjoyment of: EMPLOY <the pronunciations that people from different parts of the country use> <wondered whether he would ever use the tie she had given him>
> * * *
>
> "3 : to carry out a purpose or action by means of : make instrumental to an end or process: apply to advantage: turn to account: UTILIZE <carried air mail using two small single-engined planes and five employees - Current Biography> <some of the best tests ... can be used only by professional psychologists - Bruce Payne>"

---

[15] The parties do not dispute that Plaintiff's social security benefit is a "benefit payable under the federal old age and survivors insurance program."

*Webster's Third New Int'l Dictionary* 2523-24 (unabridged ed 1981). The legal definitions were similar:

> "To make use of, to convert to one's service, to avail one's self of, to employ. * * * To leave no capacity of force or use in."

*Black's Law Dictionary* 1381 (5th ed 1979).

Consistent with Plaintiff's position, the court finds these definitions sufficiently broad to include both (1) the counting of social security benefits when summing up the components of income to add to the tax base and (2) the counting of social security benefits when determining whether, and to what extent, to allow a subtraction from the tax base or a credit that reduces tax owed. In either exercise, social security benefits are "employed," "applied," "utilized," or "instrumental" to determining the amount of tax owed. Plaintiff proffers a simple but-for test: if social security benefits are omitted from the computation of the Oregon subtractions for federal tax liability and medical expenses, as well as Oregon's personal exemption credit, the result of each of those computations changes. (*See* Ptf's 2023 Memo on MSJ at 10 ("There is a very simple mechanical way to test whether Social Security benefits are 'used in computing the tax liability' on a return in violation of the second sentence of Oregon Constitution Article IX, Section 9. Prepare the federal and Oregon returns without the Social Security benefits, then add the Social Security benefits to the returns. If the Oregon tax goes up solely on the basis of adding Social Security benefits to the return, there is a violation of Oregon Constitution Article IX, Section 9, somewhere in the calculation.").

Defendant asserts that Plaintiff's interpretation of "used" is invalid because it is so broad as to contradict the requirement in the first sentence to subtract social security benefits from taxable income, let alone any requirement to subtract them from an eligibility threshold for a different subtraction or a credit. (*See* Def's 2023 Reply at 4 ("Article IX, Section 9 does not

define the meaning of 'used in computing the tax liability.' ORS 316.054 uses Social Security benefits to reduce federal taxable income to compute tax liability. Plaintiff uses Social Security benefits included in federal AGI to create his modified AGI and calculate tax liability.").) The court rejects Defendant's characterization. The plain meaning of "used" is sufficiently broad to encompass Plaintiff's interpretation. Yet, as is clear from statutory context, discussed below, Plaintiff's interpretation does not read the subtraction of social security benefits out of the statute.

b. "Computing"

The court turns to "computing," whose plain meaning the court finds straightforward:

"**1 :** to determine or ascertain esp. by mathematical means **:** arrive at an answer to or sum for <*compute* a bank balance> <*compute* the area of a field> <*compute* the diameter of the sun>"

*Webster's Third New Int'l Dictionary* 468 (unabridged ed 1981) (defining "compute"). Nothing in this definition limits "computing" to subtraction. To "calculate" can involve any mathematical function or combination of functions.

c. "Tax liability"

Finally, the court examines the phrase "tax liability." *Webster's* does not define this phrase as a whole. Its definition of "liability" includes:

"2: something for which one is liable: as

"a (1) : an amount that is owed whether payable in money, other property, or services — compare accrued liability, capital liability, contingent liability, current liability, fixed liability

"(2) liabilities plural : pecuniary obligations : debts — compare asset
"b: an obligation or duty which is owed by one person to another to refrain from some course of conduct injurious to the latter or to perform some act or to do something for the benefit of the latter and for breach of which the law gives a remedy to the latter (as damages, restitution, specific performance, injunction) :

accountability and responsibility to another enforceable by legal civil or criminal sanctions.

*Webster's Third New Int'l Dictionary* 1302 (unabridged ed 1981). The 1979 (fifth) edition of *Black's Law Dictionary* does not define "tax liability." A definition of "tax liability" first appears in the 1990 edition of Black's Law Dictionary, which defines the entire phrase as:

> "The amount which a taxpayer owes under the tax law after properly computing gross income and deductions, using the appropriate tax rate and subtracting any applicable tax credits."

*Black's Law Dictionary* 1462 (6th ed 1990). The same edition defines "tax credit" as:

> "An amount subtracted from an individual's or entity's tax liability to arrive at the total tax liability. A tax credit reduces the taxpayer's liability dollar for dollar, compared to a deduction which reduces taxable income—upon which the tax liability is calculated. A credit differs from a deduction to the extent that the former is subtracted from the tax while the latter is subtracted from income before the tax is computed."

*Id*. at 1461.

### d.     Conclusion as to Text Interpretation

From these definitions, the court concludes that the plain meaning of the second sentence of Article IX, Section 9 is to require that social security benefits be entirely excluded from any formula used to determine the amount of tax the taxpayer owes. This conclusion is consistent with Plaintiff's position and is contrary to Defendant's narrower position.

### 2.  *Context*

The parties have identified various sources of relevant context. The court begins by listing and describing them chronologically in relation to the passage of Article IX, Section 9 in the statewide election held on May 20, 1986. Thereafter, the court will discuss its analysis, together with relevant legislative history or other enactment history.

### a.  Chronology and snapshot of context as of May 20, 1986, election on Article IX, Section 9.

i.        Pre-1983:  IRS treats social security benefits as excluded from gross income.

From 1941 through 1983, the Internal Revenue Service (IRS) classified social security benefits as excluded from gross income, without a clearly stated legal theory.  *See* Rev Rul 70-217, 1970-1 CB 12 (social security benefits "not includible in the gross income of the recipients"); Office Decision IT 3447, 1941-1 CB 191 (describing social security benefits as "insurance benefits").

ii.        1983:  Congress enacts partial taxability of social security benefits.

In 1983, Congress enacted IRC § 86, which reversed the IRS's long-standing administrative practice of treating social security benefits as excluded from gross income. "Congress concluded that 'social security benefits are in the nature of benefits received under other retirement systems' and like other retirement benefits should be taxed to the extent they exceed the recipient's nondeductible contributions."  Bittker & Lokken, *Federal Taxation of Income, Estates, and Gifts* ¶ 16.5 (quoting S Rep No 23, 98th Cong, 1st Sess (1983), 25); *see* Pub L No 98-21, § 121(a), 97 Stat 65 (1983).  Effective for tax years beginning after 1983, section 86 of the Code included in gross income up to one-half the social security benefit received, if the taxpayer's other income (as defined) exceeded a specified dollar amount.  *See* IRC § 86(a)-(c) (1985).

iii.  Failed 1984 Oregon ballot measure 2 would have treated social security benefits as "not * * * considered income."

Ballot Measure 2 on the November 1984 statewide ballot would have added to the Oregon Constitution a set of limitations on property taxes, income tax, and fees or charges.  *See* Official Voter's Pamphlet, General Election, Nov 6. 1984, 5-6.  The property tax limitations would have included key features of the limitations that eventually were adopted in 1990 (Ballot Measure 5) and 1997 (Ballot Measure 50):  a 1.5 percent limitation on tax rates other than for

bonded indebtedness, a cap of two percent on the annual growth of the assessed value of property, and a "double majority" popular vote requirement for new taxes or increased rates that would have required a 50-percent turnout. *See id.*

The measure also included a sentence that states: "Federal Social Security benefits shall not be considered income for purposes of State or local taxation." *Id.* at 6. The official explanation includes a sentence that provides: "Measure 2 exempts Federal Social Security benefits from state and local taxes." *Id.* In the arguments section of the voter pamphlet, the only specific mention of social security benefits is found in an argument in opposition, which refers to the property tax provisions as a "California transplant tax limitation" with a "new wrinkle." "It prohibits taxing social security benefits. Oregon *never has* taxed and *never will* tax social security. The purpose of this ploy is to gain support for a measure Oregonians have already defeated three times." *Id.* at 8 (emphases in original).

iv. Oregon statutes as of 1985 and 1986 containing terms used in Article IX, Section 9.

- "*Used*." The term "used" appears in a range of contexts in the personal income tax law. *See, e.g.,* ORS 316.217 (1985) (governing taxpayer's method of accounting "used" for federal and state purposes); ORS 316.849 (1985) (biofuel; allowing partial exemption from tax to the extent that 75 percent of ethanol or other substitute fuel is "used" in making gasohol); ORS 316.854(1)(a) (allowing subtraction from federal taxable income for cost of facility or vehicle "used" in trade or business or home of "elderly" or "handicapped" person).

- "*Computing.*" The personal income tax law used the word "computing," or variations thereon, to refer to the determination of various items, including Oregon taxable income, the amount of tax, the amount of subtractions, and the amount of credits. *See, e.g.,* ORS 316.014 (1985) (prescribing connection date to federal law governing net operating loss for purposes of "computation of state taxable income")); ORS 316.037(1)(b) (1985) (imposing tax on part-year resident; "amount of the tax shall be computed as if the part-year resident were a full-year resident and shall be multiplied by [ratio prescribed under ORS 316.117]"); ORS 316.685(1) (1985) (subtraction for federal income tax accrued "shall be computed on the accrual method of accounting"); ORS 316.087 (1985) (credit allowed to elderly or disabled resident shall be allowed to nonresident, "computed in the same manner * * * as the credit allowed a resident").

- *"Tax liability."* Numerous income tax statutes in effect when the voters adopted Article IX, Section 9 used the phrase "tax liability." Many of these statutes allowed credits. *See, e.g.,* ORS 316.084(3), (4) (1985) (credit for cost of fish habitat improvement project, not to exceed "the tax liability of the taxpayer"); ORS 316.086(7), (8) (credit for connecting to a geothermal heating system; allowing unused amount to be "carried forward and offset against the taxpayer's tax liability" for subsequent years); *see also* ORS 316.587(4) (1985) (interest not to be imposed on underpayment by resident who "had no tax liability for" the prior full tax year and other conditions are met); ORS 316.587(6) (1985) (defining "tax" as "tax imposed by this chapter minus any credits * * * other than [credit for taxes withheld by employer]").

v. Eight Oregon formulas, as of 1985 and 1986, referring to AGI or to social security benefits.

Although the two subtractions and one credit at issue in this case were not subject to phase-outs in 1986, the following formulas in Oregon personal income tax law as of 1986 directly or indirectly referred to social security benefits.[16] (*See generally* Ptf's 2024 Mot Summ J at 3-4; Def's 2023 Cross-Mot at 7.)

- *Federal and Oregon medical expense deduction based on AGI.* IRC § 213(a) (1985) allowed a deduction for certain medical expenses "to the extent that such expenses exceed 5 percent of adjusted gross income."[17] In computing Oregon taxable income, Oregon law at that time generally required the taxpayer to add the deducted amount back into income as an "excess itemized deduction." ORS 316.695(1)(a) (1985). Oregon law then allowed the taxpayer to again subtract from income the amount that was allowed under IRC § 213 (1985). *See* ORS 316.695(1)(c)(A) (1985). Under this use of AGI as a "floor," a taxpayer whose AGI included a portion of social security benefits could (all else being equal) owe more Oregon income tax than if social security benefits were not included, because inclusion of social security benefits in AGI increased the dollar amount of medical expenses the taxpayer must incur before being allowed to deduct any portion of them under IRC § 213 (1985).

---

[16] *See* 316.680(1)(b) (1985) (subtraction for federal tax liability); ORS 316.085(5) (1985) (medical expense subtraction); ORS 316.693(3) (1985) (personal exemption credit).

[17] The federal medical expense deduction was in place long before the federal government began taxing social security, though the formula has changed over time. *See e.g.* IRC § 213 (a)(2)(B) (1954) (allowing a deduction for medical expenses for "the amount by which such expenses for the care of such dependents exceed 3 percent of the adjusted gross income" of a taxpayer who is 65 years or older or who has a spouse who is 65 years or older).

- *Federal and Oregon casualty and theft loss deduction based on AGI.* A similar "floor" under IRC § 165(h) (1985)[18] allowed a deduction for personal losses from fire or other casualties, or from theft, to the extent that the aggregate amount for the year "exceeds 10 percent of the adjusted gross income of the individual." The Oregon addback and re-subtraction provisions of ORS 316.695(1) likewise applied.

- *Federal and Oregon credit for elderly or disabled based on AGI.* ORS 316.087 (1985) allowed an Oregon credit for elderly or disabled persons equal to 15 percent of the similar credit claimed on the taxpayer's federal return. For a period beginning before 1982 through 1985 the amount of the federal credit--and therefore also the Oregon credit--potentially was reduced for a taxpayer whose AGI included social security benefits.

  o As of 1982, the amount of the federal credit first was simply reduced by the entire amount of the taxpayer's social security benefit; any remaining credit amount was then reduced by 50 percent if the taxpayer's AGI exceeded a specified dollar amount. *See* IRC § 37(a)(3)(A), (c)(1) (1982) (reduction of initial credit amount for "amounts received * * * under title II of the Social Security Act").
  o The Social Security Amendments of 1983--the same law that created IRC § 86--retained this basic structure but amended the credit reduction provision so that only social security benefits that were "excluded from gross income" directly reduced the amount of the credit. *See* Pub L No. 98-21, § 122, 97 Stat 65 (1983) (amended text of IRC § 37(c)(3)(A)(i)). The 1983 act retained the AGI limitations, which meant that the portion of social security benefit that was *no longer* "excluded from gross income" under new IRC § 86 would increase the taxpayer's AGI, potentially above the dollar threshold that triggered a 50-percent reduction in the credit. *See id.* (amended text of IRC 37(d)(1)).
  o In 1984, Congress recodified the federal credit provision from section 37 to section 22 of the Code. *See* Pub L No. 98-369, § 471(c), 98 Stat 494 (1984).

- *Oregon credit for in-home care expenses based on social security benefits; Oregon rental assistance property tax program.* ORS 316.148 (1985) allowed an income tax credit for certain expenses paid "in order that the qualified individual is not placed or maintained in a nursing home unnecessarily." One criterion for eligibility was "household income" below a specified amount (a cap). ORS 316.147(2)(a) (1985). "Household income" was defined by reference to statutes governing a homestead and rental assistance program that provided payments to low-income property owners and renters. *See* ORS 310.630 to 310.690 (1985). "Household income," for both programs, expressly included "[p]ayments received under the federal Social Security Act which are excluded from

---

[18] The version of the Code in existence prior to federal taxation of social security benefits provided the same. *See* IRC § 165(h)(A)(ii) (1982).

federal gross income." ORS 310.630(8)(a)(N) (1985).[19] Therefore, a taxpayer's social security benefits counted toward the cap amount of "household income" and potentially rendered the taxpayer ineligible for the credit.

- *Oregon subtraction for public retirement benefits.* A similar reference to "household income" appears in ORS 316.680(1)(c) (1985), which generally allowed certain low-income retirees to subtract from federal taxable income amounts received from a public pension or other public retirement fund, subject to the following exception: "If the taxpayer receives $25,000 or more of household income, as defined in ORS 310.630, the subtraction is zero." As under the credit for in-home care expenses discussed above, a retiree taxpayer's social security benefits counted toward the $25,000 cap amount of "household income" and potentially rendered the taxpayer ineligible for the subtraction.

- *Oregon surtax on "tax preference items" based on AGI.* ORS 316.037(2) (1985) imposed a surtax, at graduated rates from 1 percent to 3 percent, on the taxpayer's "tax preference items" (items that were deductible in computing federal taxable income, but that were required to be added back in computing federal alternative minimum tax). To be subject to the Oregon surtax, the taxpayer was required to have a minimum amount of "adjusted gross income" and a minimum dollar amount of tax preference items. *See* ORS 316.037(2), (5) (1985). This provision potentially increased the tax liability of affected taxpayers: because social security benefits were included in AGI, an Oregon taxpayer potentially reached the threshold amount, and thus became required to pay the surtax, sooner than would have been the case if social security benefits were not included.

- *Increased Oregon standard deduction based on AGI.* ORS 316.695(1)(c)(B) (1985) contained the formula to compute the Oregon-specific "standard" deduction. The formula allowed a standard deduction of "the larger of * * * $1,050 or 13 percent of federal adjusted gross income, not to exceed $1,500." This provision *reduced* the tax liability of affected taxpayers: because social security benefits were included in AGI, a non-itemizing Oregon taxpayer claiming the Oregon standard deduction could claim a higher amount of that deduction.[20]

---

[19] "Household income" also included "[n]ontaxable interest not included in federal adjusted gross income" and other typically tax-exempt items such as gifts, life insurance proceeds, and personal injury damages. *See* ORS 310.630(8)(a) (1985). The parties have not discussed the express inclusion of social security benefits in "household income" for purposes of the rental assistance property tax program, and the court has found no discussion of it.

[20] ORS 316.695(1)(c) (1985) states in relevant part:

"(c) From federal taxable income there shall be subtracted the larger of
"(A) The taxpayer's itemized deductions as defined in section 63(f) of the Internal Revenue Code exclusive of his or her Oregon income tax, or
"(B) A standard deduction that is the larger of $1,050 or 13 percent of federal adjusted gross income, not to exceed $1,500. However, if the taxpayer is a married individual filing a separate return, the standard deduction under this subparagraph is the larger of $525 or 13 percent of federal adjusted gross income, not to exceed $750."

- *Increased federal and Oregon charitable contributions deduction based on AGI.* IRC § 170(a)(1) (1985) allowed an individual taxpayer a deduction for a "charitable contribution," up to 30 percent or 50 percent of the individual's "contribution base" for the year, depending on certain characteristics of the donee. *See* IRC § 170(b) (1985).[21] The contribution base was defined as AGI computed without regard to any net operating loss carryback deduction. *See* IRC § 170(b)(1)(F) (1985). These limitations meant that an individual taxpayer with social security benefits generally had a higher AGI, and thus could deduct a higher amount of charitable contributions in the current year, than would have been the case if social security benefits had not been included in AGI. As with the deductions discussed above for medical expenses and casualty and theft losses, Oregon law required the amount of charitable deductions claimed on the federal return to be added back, then re-subtracted. *See* ORS 316.695(1) (1985). This meant that the higher deduction amount under federal law for a taxpayer with social security benefits carried through to become a higher subtraction amount under Oregon law. Like the increased standard deduction discussed immediately above, this provision *reduced* the tax liability of affected taxpayers.

    vi.       1985 Oregon Legislation and Legislative History

The 1985 legislature adopted House Joint Resolution 26 (HJR 26), containing the text of Article IX, Section 9, for referral to the voters.[22] In the same session, the legislature enacted House Bill 2866 creating ORS 316.054, which requires the subtraction from Oregon taxable income for social security benefits. *See* Or Laws 1985, ch 154, § 2. Finally, House Bill 2011 created ORS 316.013, which defines "federal adjusted gross income" to be as determined under federal law for the tax year of the taxpayer, without any Oregon modifications. *See* Or Laws 1985, ch 802, § 3a.

---

[21] The amount of charitable contributions exceeding the contribution base was not forfeited, but could be carried over and deducted in subsequent years. *See* IRC 170(b)(D)(ii) (1982) ("if the aggregate amount of contributions described in clause (i) exceeds the limitation of clause (i), such excess shall be treated (in a manner consistent with the rules of subsection (d)(1)) as a charitable contribution of capital gain property to which clause (i) applies in each of the 5 succeeding taxable years in order of time.")

[22] The text of House Joint Resolution (HJR) 26 (1985) became Ballot Measure 1 (1986) (Measure 1). Once adopted by the voters, the same text became Article IX, Section 9 of the Oregon Constitution. This Order refers to all three interchangeably depending on the context.

Both HJR 26 (referring the text of Article IX, Section 9 to voters) and HB 2866 (creating the subtraction from taxable income in ORS 316.054) expressly refer to social security benefits. The two proposals were heard together in each chamber's respective revenue committee. While HB 2866 enacts the requirement in the first sentence of Article IX, Section 9 that social security benefits "shall not be considered income," the text of HB 2866 sheds no light on the second sentence's prohibition against "us[ing]" social security benefits in computing tax liability. Nor has the court found anything in the legislative history of HJR 26 or HB 2866 that addresses the latter issue.[23] The court concludes that neither the existence of HB 2866, nor the legislative history of HJR 26 and HB 2866, provides context relevant to the issue in this case.

The third relevant bill, HB 2011, which created the freestanding definition of federal AGI in ORS 316.013, was heard separately from HJR 26 and HB 2866. The enacted text of HB 2011 does not add meaningful context, as it does not expressly refer to social security benefits. The section most closely on point (section 3a, codified as ORS 316.013) defines "federal adjusted gross income" by reference to federal law "in effect for the tax year of the taxpayer without any of the additions, subtractions or other modifications or adjustments required under this chapter." The first portion of this definition clarifies that the same version of the Code determines federal AGI that also determines the taxpayer's other tax computations for the year, avoiding possible

---

[23] The discussion and testimony generally were at the level of whether or not to "tax[ ] social security benefits." *See, e.g.,* Testimony, House Revenue and School Finance, HJR 26 and HB 2866, Apr 17, 1985, Tape 173, Side A, 12:57 (statement of Rep. Markham opposing taxing social security); Testimony, Senate Revenue and School Finance, HJR 26 and HB 2866, May 6, 1985, Tape 168, Side A, 13:00-13:35 (statement of Rep. Young ("both the statutory and the constitutional provision [] would make social security not taxable to Oregonians."); Exhibit 2, Senate Revenue and School Finance, HJR 26 and HB 2866, May 6, 1985 (letter from Majority Leader Gold (urging Senate Revenue committee members to "prohibit any state taxing of social security and other benefits").) The court has found no discussion indicating whether legislators believed that a difference existed between the reach of HJR 26 and HB 2866. Two members of the House committee declined to vote for HJR 26, but their stated reasons do not address the issue. *See* Testimony, House Revenue and School Finance, HJR 26 and HB 2866, Apr 19, 1985, Tape 177, Side A, 11:00 – 12:00 (statement of Rep. Burrows) ("I do not believe it needs to be in the Constitution"); Testimony, House Revenue and School Finance, HJR 26 and HB 2866, Apr 19, 1985, Tape 177, Side A, 5:00 - 6:00 (statement of Rep. Schoon) ("we should be a little cautious about actually putting something into the constitution that we may have to deal with in the future").)

confusion as the Oregon legislature chooses to connect to, or disconnect from, federal law from one year to the next. The second portion states the truism that "federal adjusted gross income" is determined without regard to Oregon modifications.

The legislative history of HB 2011 does include references to potential differences that inclusion of social security benefits in AGI can make in determining tax liability.[24] The parties did not present the court with an analysis of the legislative history of HB 2011, which was a lengthy "reconnect" bill that also made many policy changes unrelated to social security benefits. However, from the portions of the record that the court has examined, it seems clear that members of the House revenue committee were aware that including social security benefits in AGI could affect Oregon tax liability through the use of formulas that incorporate AGI.[25] It

---

[24] The as-introduced version of HB 2011 would have created a subtraction from taxable income similar in effect to the subtraction ultimately adopted in HB 2866. HB 2011, § 11 (1985) (as introduced). The legislature deleted that subtraction by amendment on May 27, 1985, shortly after the May 14, 1985, passage of HB 2866.

[25] The transcribed colloquy below indicates that Defendant was the proponent of section 3a of HB 2011. As of the hearing on March 21, 1985, HB 2011 still contained the provision for subtracting social security benefits from taxable income in section 11, which may explain Representative Tom Hanlon's reference to the bill's "divorcing ourselves from the federal policy in taxing social security income and totally staying away from the taxation of even one cent of social security." After agreeing with Representative Hanlon, Defendant's representative Virlena Crosley testifies about the clarification that section 3a would bring by eliminating any mismatch between AGI as defined by reference to the Code as in effect on a fixed date (such as December 31 of a prior year) and AGI as defined by reference to a later version of the Code that applies to a taxpayer when preparing a return for a particular year. As part of her response, Crosley also refers to "medical deductions, for example, or contributions [presumably, charitable contributions], your standard deduction" as items that are measured by AGI.

> Rep Hanlon: "The feds, beginning in 1984, tax social security if it's more than $32,000 for a couple or $25,000 for a single person, is that correct, total income? * * * And so what we're doing here is we're doing a 180 degree *divorcing ourselves from the federal policy in taxing social security income and totally staying away from the taxation of even one cent of social security*, is that correct?

> Virlena Crosley, Department of Revenue: "Rep. Hanlon, that is correct, yes.

> "What section 3a does is deal with the area of adjusted gross income that has caused concern for the department every time we tie to a particular date, like December 31, 1982, or December 31, 1984. The year that the legislature is not in session, Congress has generally passed laws which affect the Oregon return. The way the laws are constructed, what generally happens is the items that you address specifically become modifications which, for example, ACRS [accelerated cost recovery system—a method of computing depreciation deductions], started out to be what the department has called for some years now, an Oregon change. For years, federal adjusted gross income was the same as Oregon adjusted gross income, and *for some limitation purposes we need to compute sort of an 'as if' federal adjusted gross income or an 'as if' Oregon adjusted gross income. An example of that is for medical deductions, for example, or contributions,*

*your standard deduction. The law says you can take 13 percent of AGI,* and the way that's been defined by our attorneys in formal opinion is that Oregon adjusted gross income in that instance means we have to go back and recompute it as if it was the federal adjusted gross income as of December 31, 1982.

"What section 3a does, is for purposes of those limitations only, in the years where we would have the Oregon change section on the Oregon return, that would never have to occur again because we would always, for those limitation purposes, say that federal adjusted gross income and Oregon adjusted gross income, for those limitation purposes, are the same. Basically, we get a lot of questions from taxpayers because they have to put additional schedules behind their return, they have to compute a schedule A for Oregon purposes and for federal purposes. We have to address that every year. So this is a simplification for taxpayers and for the department."

Testimony, House Revenue and School Finance, HB 2011, Mar 21, 1985, Tape 138, Side A, 14:00-20:00 (statements of Rep. Hanlon and Virlena Crosley, Department of Revenue) (emphases added). In response, Representative Hanlon asks whether section 3a will make policy changes and have any revenue impact. Ms. Crosley answers affirmatively as to both points.

Rep. Hanlon: "Won't that change have some policy change implications because you'd be taking a percentage? Well, I'll end my question there. Doesn't that have some policy change implications?"

Crosley: "It is a policy change to make that Oregon change section not occur, and to cause that recomputation, certainly. The items that are in the Oregon change, *let's say for example in this case, because we just tied to December 31, [19]84, and you had to put social security in as a change item rather than a modification, you would, let's say for example your federal adjusted gross income was $30,000 and $3,000 of that was social security. Basically, what you would have is $30,000 less your $3,000, and you would have an Oregon adjusted gross income of $27,000, that is the amount then you would use, $27,000, for your percentage limitation. What we are suggesting here is that you would not have to recompute, you would use the $30,000. Sometimes that's going to mean an increased limitation, and sometimes a decreased limitation.*

Rep. Hanlon: "You would use the $30,000, but under standard deduction, you've got a fixed percentage. The policy change, then under this you would take 13 percent of $30,000 rather than 13% of $27,000?"

Crosley: "That's correct, but *sometimes it's going to be just the opposite, sometimes the $27,000 will be on the federal return rather than the Oregon return. Because some of the things you have to do instead of decrease are add back. Like ACRS used to be, for example.*

Rep. Hanlon: "And this bill will have implications on the amount of income tax collected by the state of Oregon?"

Crosley: "Yes, it does have a revenue impact."

Rep. Hanlon: "I understand the purpose is simplification?"

Crosley: "Yes."

*Id.* (emphases added). The court interprets this colloquy to mean that Defendant as proponent of the bill sought to ensure that, if Congress were to change the percentage of social security benefits required to be included in AGI for a particular tax year, that same changed amount would be included in AGI for purposes of computing the Oregon standard deduction, the Oregon deduction for charitable contributions, and the Oregon deduction for medical expenses for the same tax year. Thus, the focus was not on *whether* to include social security benefits in AGI, but to ensure "simplification" in deciding *the amount* of social security benefits to include in AGI.

appears, however, that legislators saw the inclusion as sometimes increasing tax liability and sometimes decreasing tax liability: a higher amount of AGI tended to increase tax liability for a taxpayer claiming the medical expense deduction, while decreasing tax liability for a taxpayer claiming the standard deduction or the deduction for charitable contributions. Overall, legislators seemed to be focused not on *whether* to include social security benefits in AGI, but on adopting a simpler way to determine *the amount* of social security benefits to include in AGI by clarifying that the version of the Code used to define AGI should be the same version used to determine other components of tax liability.

vii. 1986 Voter Pamphlet

House Joint Resolution 26 appeared on the May 1986 ballot as Measure No. 1. The voter pamphlet entry consists of a single page containing the official explanation by the Legislative Counsel Committee and an "Argument in Favor" by three legislators appointed to provide legislative argument in support of the measure. The official explanation states:

> "Measure No. 1 prohibits the state or any local government from taxing social security or railroad retirement benefits.

> "In 1984, the federal government first imposed an income tax on a portion of the benefits received under the federal Social Security Act and the Railroad Retirement Act. The benefits are only taxed if the modified adjusted gross income exceeds $32,000 for a joint return or $25,000 for an unmarried return. Then, at the most, only one-half of the benefits are taxed. This measure does not affect this change in the federal income tax law nor the level of social security or railroad retirement benefits.

> "Current Oregon statutory law excludes all social security and railroad retirement benefits from Oregon income tax, regardless of the income level of the person receiving the benefits.

> "This measure proposes an amendment to the Oregon Constitution which prevents the state or any city, county or other unit of local government from ever imposing an income tax upon any amount of social security or railroad retirement benefits, regardless of the income level of the taxpayer."

Official Voter's Pamphlet, Primary Election, May 20, 1986, 4. The "Argument in Favor" states:

"Oregonians are concerned about Social Security. Social Security recipients fear that benefits for which they have worked so long to enjoy are in jeopardy. Those working today fear promises of future benefits will not be kept.

"Changes by the Federal government have reinforced these fears. Cost of living adjustments have been reduced and some Social Security benefits are now subject to Federal income taxes.

"Several states have followed the lead of the Federal government and tax some Social Security benefits. The possibility that Social Security benefits could be taxed in Oregon has created uncertainty for Oregonians.

"Measure 1 will end this uncertainty. Measure 1 prohibits the taxation of Social Security benefits. Measure 1 amends the Oregon Constitution to guarantee that Social Security benefits will never be taxed. Measure 1 prevents the Legislature from increasing spending by taxing Social Security benefits.

"Social Security benefits are the basic retirement income for many Oregonians. These benefits do not provide an adequate standard of living. The erosion of these benefits through taxation would place an undue hardship on many Oregonians least able to pay. "The taxation of Social Security benefits would also be unfair. Social Security recipients paid income taxes on their contribution to Social Security during their many years of work. It would be unfair to tax these benefits after retirement.

"Measure 1 will end the uncertainty about the taxation of Social Security benefits. Measure 1 prevents further erosion of Social Security benefits. Measure 1 guarantees fair Oregon tax treatment of Social Security benefits.

"Vote 'Yes' on Measure 1."

*Id.*

viii. 1986 *Oregonian* Editorial

On Friday, April 18, 1986, *The Oregonian* published an editorial endorsing passage of

HJR 26/Measure 1, stating in full:

"Don't tax Social Security

"State Ballot Measure 1, a constitutional amendment prohibiting the state or local governments from taxing either Social Security benefits or the income of those receiving retirement under the federal Railroad Retirement Act of 1974, should be supported by the voters in the May 20 primary.

"The most obvious reason for not taxing Social Security benefits at the state or local level is that retired persons are highly mobile and can easily move across state and city boundaries to the detriment of the local economy. This impact would particularly be felt in Southern Oregon and in beach communities with large retired populations.

"The chief federal argument for taxing Social Security is that the money is needed to help balance the budget and would be paid only by those well enough off to afford it.

"Federal taxes are now exacted on Social Security benefits of those earning in joint returns more than $32,000 of gross income, or more than $25,000 for single persons, but this is not as good an argument when applied to state and local jurisdictions, which must balance their budgets.

"Supporters of the Oregon measure argue that it is not fair to tax benefits for which retirees have worked and that if the state begins taxing the higher-income brackets it will have a foot in the door for an easy downward shift into lower-income groups. Even if this does not happen, 'bracket creep,' caused by inflation, would begin to affect larger numbers of retired people in the years ahead.

"Oregon law now prohibits any taxation of Social Security benefits. Passage of this constitutional amendment, which is unopposed in the Oregon Voters' Pamphlet, would provide a comfortable guarantee that some future government might not be tempted to cure a spending hangover with a Social Security tax.

"Vote yes on Measure 1."

Editorial, *Don't Tax Social Security*, *The Oregonian*, April 18, 1986, at C14.

ix.  Federal Exempt Interest Statute and Case Law as of 1985 and 1986

Finally, the court notes that the federal exempt interest statute long predates Article IX, Section 9 and thus is part of the context in which the legislature and the people acted. As of 1985 and 1986, the text of the statute read:

"Stocks and obligations of the United States Government are exempt from taxation by a State or political subdivision of a State. *The exemption applies to each form of taxation that would require the obligation, the interest on the obligation, or both, to be considered in computing a tax, except--*

"(1) a nondiscriminatory franchise tax or another nonproperty tax instead of a franchise tax, imposed on a corporation; and

"(2) an estate or inheritance tax."

31 USC § 3124(a) (emphasis added).

In addition to this longstanding context, the court notes the then-recent United States Supreme Court's decision in *American Bank & Trust Co. v. Dallas County*, 463 US 855, 862-63, 103 S C 3369, 77 L Ed 2d 1072 (1983). As discussed in greater detail below, this decision interpreted the federal exempt interest statute broadly, invalidating a state tax on the value of a bank's "net assets" that counted federal debt obligations in the bank's "equity capital formula." *See id.* at 862 ("Under the plain language of the 1959 amendment, however, the tax is barred regardless of its *form* if federal obligations must be considered, either directly or indirectly, in *computing* the tax.") (emphases in original).

b. *Analysis of Context*

i. Appearances of "used," "computing," and "tax liability" in chapter 316.

The court readily concludes that the usages in ORS chapter 316 of "used" and "computing" in Article IX, Section 9 are varied and are consistent with the broad plain meaning of each of those terms. As to the term "tax liability," the widespread usage in credit statutes in chapter 316 (as well as in chapters 315 and 317) confirms that the term refers both to the initial amount of tax (determined by multiplying the tax rate times Oregon taxable income) and to any final amount of tax (determined by subtracting any credits from the initial amount of tax); there is no different label for the tax liability that remains (if any) after a credit has been applied. *See, e.g.,* ORS 316.084(3), (4) (1985) (credit for cost of fish habitat improvement project, not to exceed "the tax liability of the taxpayer"); ORS 316.086(7), (8) (credit for connecting to a geothermal heating system; allowing unused amount to be "carried forward and offset against the taxpayer's tax liability" for subsequent years); *see generally Con-way Inc. & Affiliates v. Dept. of Rev.*, 353 Or 616, 621-22, 302 P3d 804 (2013) (defining a credit as "'[a]n amount subtracted

directly from one's total tax liability, dollar for dollar, as opposed to a deduction from gross income.'") (quoting *Black's Law Dictionary* 1501 (8th ed 2004)).  Therefore, the court concludes that this portion of the statutory context supports Plaintiff's position that both his phased-out subtraction amounts for federal tax liability and for medical expenses, as well as his phased-out personal exemption credit amounts, were "used" in "computing" Plaintiff's "tax liability."

      ii.  Preexisting statutory formulas referring to AGI or to social security benefits; legislative history of 1985 acts.

As listed in the prior section, Oregon voters are deemed to have been aware, when they voted to adopt Article IX, Section 9 in May 1986, that Oregon law already required the use of social security benefits (primarily as embedded in AGI) in a total of eight formulas to determine eligibility for five deductions, two credits, and a surtax, all of which potentially affected how much Oregon tax was owed.  Moreover, although the court is unaware of any such formulas created during the 1985 session, the colloquy with Defendant's representative Crosley, found in the legislative history of HB 2011, indicates that legislators were actually aware that a portion of social security benefits was required to be included in AGI, and that that inclusion could affect computation of the Oregon standard deduction or the Oregon subtractions for charitable contributions and medical expenses.  While these indicators support an argument that the 1985 legislature saw the use of social security benefits in formulas that determine tax liability as consistent with HJR 26, for the following reasons they do not persuade this court that the second sentence of Article IX, Section 9 allows those uses.

First, the court's use of context as an interpretive tool, including preexisting statutes and the legislative history of a referred constitutional amendment, must yield to the plain text of the amendment itself.  *See State v. Gaines*, 346 Or 160, 173, 206 P3d 1042 (2009) ("When the text of a statute is truly capable of having only one meaning, no weight can be given to legislative

history that suggests--or even confirms--that legislators intended something different."). As discussed, the court concludes that the plain language of the second sentence of Article IX, Section 9 squarely prohibits exactly the uses of social security benefits at issue in this case.

Second, the colloquy does not mention HJR 26, much less the second sentence of what became Article IX, Section 9. At most, the colloquy marks the underlying issue--that including social security benefits in AGI may change taxpayers' tax liability--but the colloquy offers no insights into how to reconcile that fact with the then-proposed prohibition against the "use[ ]" of social security benefits in "computing * * * tax liability."

Third, although the context provided by prior legislative enactments is relevant, the court must consider that the voters' intention may have been different from that of the legislators who adopted the referral. The voters in May 1986 are deemed to have been *aware* of the statutes that used social security benefits in formulas to compute tax liability, yet the voters were not being asked to *vote on* any of those statutes. By May 1986, the voters may simply have intended that their directive in the second sentence of Article IX, Section 9 would cause the legislature to refrain from enacting new such statutes, or to amend existing ones,[26] or both. *Cf. State v. Lane*, 357 Or 619, 634, 355 P3d 914 (2015) ("legislative deliberation is a part of the constitutionally mandated adoption process. It is conducted in public, and its records are available to the public. * * * * * That does not necessarily mean that such legislative history will have significant weight. As always, the weight that the courts will accord a particular bit of enactment history will depend on the circumstances--including the clarity with which the legislature's or the

_____

[26] The applicability date of Article IX, Section 9 ("tax periods beginning on or after January 1, 1986") would have allowed the legislature around seven months before the end of the 1986 tax year to meet in special session to conform the seven existing statutory formulas to the new prohibition in time for tax returns to be filed by April 15, 1987. Although a major undertaking, such a special session had occurred two years before, when the legislature convened at the end of July 1984 to enact a change to the personal income tax law applicable to "taxable years that begin on or after January 1, 1984, and prior to January 1, 1985." Or Laws, 1984, ch 2, § 2(1).

people's intentions have been expressed in the text of an enactment and the nature of the history itself.").

### iii. 1986 Voter Pamphlet and *Oregonian* Editorial

Defendant correctly points out that the 1986 voter pamphlet and the contemporaneous *Oregonian* editorial say nothing about the inclusion of social security benefits in AGI-based formulas. Defendant appears to argue that this silence means that Article IX, Section 9 should be read as inapplicable to those formulas and to the three that apply in this case. Defendant argues:

> "The preexisting statutory framework shows that the 1985 legislature *and the voters in 1986* had no intention other than to exclude Social Security from Oregon taxable income. The 1985 legislature left intact Oregon's tie to numerous provisions that conditioned amounts of certain items on federal AGI without adjustment for Social Security benefits."

(Def's 2024 Cross-Mot at 6 (emphasis added).) The court rejects this argument because mere silence cannot overcome the plain and comprehensive text in the second sentence of Article IX, Section 9. Defendant has not put forward any positive indicators that the voters intended the second sentence to have only the narrow meaning of the first sentence. Defendant's interpretation also conflicts with an axiomatic rule of statutory construction, which directs the court to avoid interpretations that result in redundancy and meaningless surplusage. *See e.g. Blachana, LLC v. Bureau of Labor and Industries,* 354 Or 676, 692, 318 P3d 735 (2014) ("[R]edundancy, of course, is a consequence that this court must avoid if possible."); *State v. Kellar*, 349 Or 626, 636, 247 P3d 1232 (2011) ("Defendant's interpretation results in a redundancy, something that we seek to avoid in interpreting statutes."). At most, the court is inclined to infer only that the subtraction from taxable income was easier to explain--and that that single subtraction likely had a greater dollar impact on any particular taxpayer--than any use of social security benefits in a phase-out formula. In any event, the court declines to infer from

silence in the legislative record that the voters meant the exact opposite of the plain meaning of the second sentence of Article IX, Section 9.

Plaintiff points to references to the "income level" of social security benefit recipients, which appear in the official explanation and in the April 18, 1986, *Oregonian* editorial. (*See* Ptf's 2023 Mot Summ J Memo at 14-16.) According to Plaintiff,

> "the information provided to the voters was that taxation of Social Security benefits based on income was precisely the sort of thing the constitutional amendment was intended to prevent. That is also precisely what happens when a taxpayer's Oregon income taxes are increased by using Social Security benefits included in federal AGI to phase out deductions or credits, as occurs under the statutory provisions at issue in this case."

(*Id.* at 16.) The court finds that, when read in context, the passages Plaintiff identifies do not specifically refer to phase-outs, but rather to Congress's choice in IRC § 86 to include a portion of social security benefits in gross income only for those taxpayers whose income from certain other sources exceeded a specified dollar amount. *See* IRC § 86 (1985). The passages are, therefore, not evidence of the voters' intention as to the application of Article IX, Section 9 to AGI-based phase-outs.[27]

---

[27] In the interest of thoroughness, the court has considered, but rejected, any reading of the official explanation as constraining the meaning of the second sentence of Article IX, Section 9 to only require the subtraction now in ORS 316.054. The court specifically tests whether the following passage could be read to inform voters that Article IX, Section 9 does the same thing that ORS 316.054 does, except with greater permanence and with application to local taxes to boot:

> "Current Oregon statutory law excludes all social security and railroad retirement benefits from Oregon income tax, regardless of the income level of the person receiving the benefits.

> "This measure proposes an amendment to the Oregon Constitution which prevents the state or any city, county or other unit of local government from ever imposing an income tax upon any amount of social security or railroad retirement benefits, regardless of the income level of the taxpayer."

The court concludes that the text of the passage is too loose to support any such reading. First, at the time voters were considering Measure 1, nothing in Oregon law literally "exclude[d]" social security benefits from "tax." ORS 316.054 subtracts social security benefits from taxable *income,* but not from Oregon *tax.* Second, the portion referring to Measure 1 is similarly vague: Oregon has never "impos[ed] an income tax upon" any one item of income. The tax is imposed on "taxable income," which as discussed throughout this order is a combination of numerous items of income, minus federal deductions, plus Oregon additions, and minus Oregon subtractions.

c. *Conclusion Based on Context*

The court finds nothing in the context supplied by contemporaneous usage of the key statutory terms, or in the 1986 voter pamphlet, or in the editorial presented to the court, that addresses the scope of the second sentence of Article IX, Section 9. The preexistence of at least eight statutory formulas directly or indirectly incorporating social security benefits to determine tax liability is some evidence that the legislature considered those formulas compatible with the constitutional provision they were debating for referral. However, the court finds any such view in conflict with the plain text of Article IX, Section 9, and the court in any event sees no basis to impute such a view to the people.

d. *Other Arguments*

The court finds the parties' remaining arguments unpersuasive.

i. Legislature's Concerns About a Property Tax Initiative

Plaintiff argues that Article IX, Section 9 must be read broadly as evidence of a legislative intention to provide overwhelming reassurance to voters that their social security benefits are free of tax, in order to make voters less likely to vote for a sweeping property tax limitations provision similar to failed Ballot Measure 2, which the voters rejected in 1984. (*See* Ptf's 2023 Mot Summ J Memo at 13 ("The reason HJR 26 was proposed and so quickly passed in the 1985 legislative session was not to get the Social Security exemption into the Oregon Constitution. Rather it was to prevent the anti-tax activists from using the unpopular federal tax on Social Security as leverage to get a broader tax limit enacted by initiative.").) The court agrees that this concern likely motivated the proponents to enshrine some form of ban on

---

The court concludes that the explanation is an intentionally short, broadbrush attempt to convey to voters the general concept that both provisions require the subtraction now in ORS 316.054, but the court does not conclude that the explanation equates the two provisions or constrains the much broader text found in Article IX, Section 9.

taxation of social security benefits in the constitution, and the same concern could have moved them to draft HJR 26 broadly. *See e.g.*, Testimony, House Revenue and School Finance, HJR 26 and HB 2866, Apr 19, 1985, Tape 177, Side A, 7:00 (statement of Rep. Markham (stating that the possibility that Oregon might "tax social security" was a "feather in the cap" of proponents of proposition 2 that HJR 26 would "take away" from them).) However, Plaintiff's proffered conclusion is speculative as to the intention of the legislature, and as to the people it is both speculative and of doubtful relevance for the reasons stated above.

ii.      Use of Social Security Benefits in Phase-Outs as "Unrelated"

Defendant frequently characterizes the use of social security benefits in phase-out formulas as "means-testing," or as the application of a "baseline" to determine a taxpayer's "ability to pay." (*E.g.*, Def's 2023 Cross-Mot at 4.) By contrast, Defendant asserts, Article IX, Section 9 is "intended to prevent *direct* taxation of Social Security benefits, not to prohibit the use of federal AGI as a benchmark for eligibility determinations for *unrelated* subtractions and credits." (Def's 2023 Reply at 5 (emphases added).)

The court concludes that this argument stands in opposition to the text and statutory context above. First, as discussed, the second sentence of Article IX, Section 9 has a wide reach and is not merely a narrow prohibition against "direct" taxation of social security benefits. Second, in Oregon as in other net income tax states, there is no such thing as "direct" taxation of any one item of income. Oregon taxes only that specific blend of certain income items and prescribed deductions, additions, and subtractions that together comprise "taxable income." Third, means-testing pervades the entire structure of the Oregon personal income tax:

- Gross income excludes welfare payments, damages received on account of personal physical injury, and the return of capital previously expended such as the basis in property sold. *See* Bittker & Lokken, *Federal Taxation of Income, Estates, and Gifts* ¶ 13.1.4 (addressing exclusion of damages for personal injury and citing IRC § 104(a)(2);

*id*. at ¶ 16.4 (discussing exclusion of welfare benefits and citing Notice 99-3, 1999-2 IRB 10); *id*. at ¶ 5.4 (citing IRC § 1001(a).)

- Major portions of the Code reflect a "fundamental legislative decision to tax net rather than gross income." *Id*. at ¶ 20.1.  Given the wide range of profit margins for various business or investment activities, taxing only what is left after money-making expenditures has the effect of leveling the playing field and taxing based on ability to pay.

- Oregon's graduated rates of tax require Oregonians with higher incomes to pay tax at higher rates.  *See* ORS 316.037(1)(a) (rates ranging from 4.75 percent to 9.9 percent).

Characterizing the inclusion of social security benefits in AGI for purposes of applying the "phaseout" formulas as a "means-testing" mechanism does not create a meaningful distinction, nor does that label overcome the plain prohibition against "us[ing]" social security benefits in computing tax liability.

  iii. Post-1986 Legislation

Plaintiff argues that the legislature's repeal in 1987 of two of the eight formulas discussed above is evidence that the legislature understood Article IX, Section 9 to prohibit the use of social security benefits in such formulas.  (*See* Ptf's 2023 Response at 6 (arguing that legislature "quickly cured" its "oversight" by amending out of existence the surtax on "tax preference items" in ORS 316.037(2) (1985) and the increased Oregon standard deduction based on AGI in ORS 316.695(1)(c)(B) (1985)).); *see* Or Laws 1987, ch 293, §§ 6, 25 (HB 2225).[28]  Defendant responds, correctly, that the actions of a later legislature generally are not relevant context for determining the intention of a prior legislature.  (*See* Def's Reply and Response at 5-6 (citing *Con-way, Inc. & Affiliates v. Dept. of Rev.*, 353 Or 616, 626, 302 P3d 804, 809 (2013).)  And later actions by the *legislature* seem even less relevant when the prior intention that the court

---

  [28] House Bill 2225 was the perennial "reconnect" bill to consider whether or how to conform Oregon law to recent federal income tax law changes.

must discern is that of *the people*, a vastly larger lawmaking body. Certainly, the later legislature must deal with what the people have enacted, but at least in the circumstances of this case, the court sees no basis to impute intention in the opposite direction.

Nonetheless, in reviewing the 1987 bill to which Plaintiff refers, the court has examined portions of the legislative history, which reveal that the legislature considered in some depth the constitutionality of the use of social security benefits in phase-outs. The first such discussion involved the subtraction for public retirement benefits under ORS 316.680(1)(c) (1985), which the 1987 legislature ultimately amended by adding an express prohibition against including social security benefits in "household income" as otherwise defined in ORS 310.630. *See* Or Laws 1987, ch 293, § 23. House committee minutes from an April 6, 1987, hearing state that an attorney in the Office of Legislative Counsel, Barbara Seymour, testified about an opinion issued by the Oregon Attorney General's office, which aligned with Seymour's own view. *See* Minutes, House Revenue and School Finance, Apr 6, 1987, at 1 (referring to testimony of Barbara Seymour on proposed exclusion of social security from household income for purposes of retiree benefits).[29] The minutes clearly record Seymour as stating that the second sentence of Article IX, Section 9 was "very strong language" that was "analogous" in its scope to the federal exempt interest statute, which "had been held to apply to all computations." *Id.* at 1-2.[30] Other statements in the minutes raise ambiguities that the court cannot resolve in the absence of a direct recording of the proceedings.

---

[29] Normally, the court would cite to the audio of the committee hearing, rather than the abbreviated committee minutes. However, in this case, the Oregon Secretary of State Archives was unable to locate the audio tape that corresponds to the relevant part of the hearing, Tape 96, Side A, and the court has been unable to locate any other copies.

[30] The court understands "held" as a reference to the United States Supreme Court's holding in *American Bank & Trust* (discussed below), which had been decided three years earlier.

Second, in a Senate hearing one month later on a portion of the bill addressing the Oregon credit for elderly or disabled based on AGI in ORS 316.087, a representative of Defendant, Gary Humphrey, recounted advice from Defendant's counsel that "any credits we allow against Oregon tax won't be affected by the constitutional limit on including social security in household income." Humphrey explained that "tax liability is arrived at before credits are involved," and he characterized credits as "a form of paying off your tax liability." Testimony of Gary Humphrey, Senate Revenue and School Finance, HB 2225, May 5, 1987, Tape 120, Side A, 26:00-28:49. The representative addressed only the credit at issue and did not address phase-out formulas that embed social security benefits in subtractions or deductions. Nor did Humphrey reconcile his explanation about credits with the fact that the reduced amount of tax liability remaining after a credit is applied is still tax liability, such that a taxpayer whose credit is less because of social security benefits ends up with more tax liability than an otherwise similarly situated taxpayer without social security benefits.

The 1987 legislature thus engaged with witnesses and heard oral summaries of legal advice about how the second sentence of Article IX, Section 9 could apply to various phase-outs. Some of that advice and testimony may have been conflicting or even contradictory. The parties have not presented any contemporaneous written legal advice, nor has the court found it in the archival records of the particular bills discussed in the parties' briefing. Both parties refer to the fact that the legislature has, since 1986, enacted numerous phase-outs containing various formulas that incorporate social security benefits. While that fact emphasizes the consequential nature of the issues in this case, this court sees no role in the legal analysis for those post-1986 acts.

B.      *Federal Exempt Interest Statute: 31 USC §3124(a)*

The court similarly concludes that the federal exempt interest statute prohibits Oregon from including interest on federal debt obligations in a formula that sets an income threshold, above which a taxpayer's eligibility for personal income tax subtractions and credits is phased out. As to this issue, this court's reasoning is based largely on *American Bank & Trust*, which analyzes the statute's text, structure, and legislative history. As an initial matter, however, this court examines the statutory text to identify the relevant terms:[31]

> "Stocks and obligations of the United States Government are exempt from taxation by a State or political subdivision of a State. *The exemption applies to each form of taxation that would require the obligation, the interest on the obligation, or both, to be considered in computing a tax, except--*
>
> "(1) a nondiscriminatory franchise tax or another nonproperty tax instead of a franchise tax, imposed on a corporation; and
>
> "(2) an estate or inheritance tax."

31 USC § 3124(a) (emphasis added).

The parties focus on the second sentence, which specifies the reach of the exemption declared in the first sentence. Congress adopted the second sentence in 1959, and it remained

///

///

///

///

///

///

///

---

[31] The full text is reprinted at the beginning of this order.

substantively unchanged after a 1982 recodification.[32]  The core of the second sentence[33] can be

reformulated, as relevant to this case, as follows:

> A State or political subdivision of a State shall not consider interest on obligations of the
> United States Government in computing a tax.

Within the second sentence, the court determines that the two terms requiring analysis are

"consider" and "computing."

1.  *"Computing."*

The court already has determined above the plain meaning of "computing" as of 1985 for

purposes of Article IX, Section 9, and the court finds no difference as of approximately 1959:

> "**1 :** to determine or ascertain especially by mathematical means **:** arrive at an answer to
> or sum for <*compute* a bank balance> <*compute* the area of a field> <*compute* the
> diameter of the sun>"

*Webster's Third New Int'l Dictionary* 468 (unabridged ed 1961) (definition of "compute").

2.  American Bank & Trust *defines "considered," for purposes of the federal exempt
interest statute, as "taken into account."*

As for "consider," the United States Supreme Court defined the term in 1983:

> "Giving the words of amended § 3701 their ordinary meaning, there can be no question
> that federal obligations were considered in computing the bank shares tax at issue here.
> *In context, the word 'considered' means taken into account, or included in the
> accounting.*"

---

[32] As enacted in 1959, the second sentence read:

"This exemption extends to every form of taxation that would require that either the obligations or the
interest thereon, or both, be considered, directly or indirectly, in the computation of the tax, except
nondiscriminatory franchise or other nonproperty taxes in lieu thereof imposed on corporations and except
estate taxes or inheritance taxes."

Pub L No 86-346, § 105(a); *see* Pub L No 97-258, 96 Stat 877, 945 (1982) (enacting current text); HR Rep No. 97-
651 97th Cong, 2d Sess (1982), 517-858 at 1 (purpose of Pub L No 97-258 is "to restate in comprehensive form,
without substantive change, certain general and permanent laws related to money and finance"); *cf. id.* at 94-95
(explaining other word selections and changes phrase by phrase).

[33] The remainder of the second sentence declares two exceptions, neither of which applies in this case.
Exception (1) appears to apply only to a tax imposed on a corporation, which excludes the Oregon Personal Income
Tax at issue here.  Exception (2) is inapplicable because the Personal Income Tax is not an estate or inheritance tax.
Neither party contends that either exception applies.

*American Bank & Trust*, 463 US at 862-63 (emphasis added). The Court there invalidated a Texas property tax imposed on the value of a bank's net assets, without any deduction for tax-exempt United States obligations held by the bank. *See id.* at 857. The tax "was computed by use of an 'equity capital formula,' which involved determining the amount of the bank's capital assets, subtracting from that figure the bank's liabilities and the assessed value of the bank's real estate, and then dividing the result by the number of shares." *Id.* at 862-63. Although Texas argued otherwise, the Court declared: "Plainly, such a tax takes into account, at least indirectly, the federal obligations that constitute a part of the bank's assets." *Id.* at 863.

This court readily concludes that the Oregon phase-out statutes at issue in this case "take[] into account" interest on federal debt obligations when that interest is included in AGI and AGI is used to reduce the amount of an otherwise allowable subtraction or credit. Under *American Bank & Trust*, it is irrelevant that the tax is not "directly" imposed on the obligation or the interest; the federal prohibition applies as well to a tax "indirectly" imposed on a base determined by a formula that includes federal debt obligations, or interest thereon.[34]

  2. *Legislative history of the 1959 act confirms that "indirect" inclusion of exempt interest in an income tax formula is impermissible.*

The legislative history of the federal exempt interest statute, as summarized by the Court in *American Bank & Trust*, confirms that Congress intended the exemption to apply to use of exempt interest in a formula:

  "The catalyst for the [1959] amendment was an Idaho tax 'upon every individual…which shall be according to and measured by his net income.' *See* Idaho Code § 63–3011 (1948). Despite this Court's holding that [the federal exempt interest statute] precluded direct state taxation of the interest on federal

---

[34] The 1982 recodification and amendments removed the phrase "directly or indirectly" from the federal exempt interest statute, but the legislative history confirms that Congress did not intend that change to have substantive effect. *See* HR Rep No. 97-651 97th Cong, 2d Sess (1982), 517-858 at 94 ("The words 'directly or indirectly' are omitted as surplus.")

obligations, as well as taxation of the underlying obligations, Idaho's position was that its tax need not exempt the interest received on federal obligations, because it was imposed on the individual and was merely *measured by his net income, rather than being imposed on the income itself*.

"* * * *

"To answer this argument, the amendment abolished the formalistic inquiry whether the tax is *on* a distinct interest, and replaced it with the inquiry whether 'computation of the tax' requires consideration of federal obligations."

463 US at 865-67 (first emphasis added; second emphasis in original; citation omitted).

In this case, the Oregon phase-out formulas are a more "indirect" way to tax interest on federal debt than Idaho's approach of including the interest in net income, which ORS 316.680(1)(a) prohibits. But this court sees no basis under *American Bank & Trust* to conclude that the federal exempt interest statute distinguishes between degrees of indirectness. The Court rejected Texas's argument that the federal exempt interest statute should be read narrowly; the Court instead described the statute as "sweeping." 463 US at 862 ("The exemption for federal obligations provided by § 3701, as amended in 1959, is sweeping"); *see id.* at 867 ("Congress intended to sweep away formal distinctions and to invalidate all taxes measured directly or indirectly by the value of federal obligations, except those specified in the amendment."). The Court specifically cautioned that no "'negative inference'" arises from the fact that the 1959 legislative history refers to the particular facts of the Idaho tax. *Id.*

3. *State Decisions*

The only relevant Oregon case applying the federal exempt interest statute relies on *American Bank & Trust* but is not squarely on point. Six years after *American Bank & Trust*, the Oregon Supreme Court applied the federal exempt interest statute to distributions received by shareholders in a regulated investment company (a corporation described in IRC § 851). *Borg v. Dept. of Rev.*, 308 Or 34, 774 P2d 1099 (1989). The court first confirmed that the federal

exempt interest statute applies to income taxes. *See id.* at 38 ("The statute applies to 'each form of taxation,' including income taxes, that require 'the interest on the obligation' as well as the value of the obligation 'to be considered in computing a tax.'") (quoting federal exempt interest statute). The court then held that the interest retains its exemption when the type of pass-through entity involved (a mutual fund) distributes it to shareholders. *See id.* at 38.

Closely on point is a Montana Supreme Court decision in a case involving the use of exempt interest in a formula that limited the taxpayer's otherwise allowable deductions. In *Schwinden v. Burlington Northern, Inc.*, 213 Mont 382, 691 P2d 1351 (1984), the tax at issue was Montana's "license" tax on corporations, a net income tax that, like Oregon's personal income tax, was measured by a base of "taxable income" consisting of gross income less deductions. Like Oregon, Montana initially excluded interest on federal debt obligations from taxable income, but it also capped the amount of deductions by means of a formula that used that interest. The formula disallowed the taxpayer's otherwise allowable deductions in the same proportion that exempt interest bore to all interest, up to a maximum disallowance equal to the taxpayer's exempt interest. *See id.* at 387-88.[35] The result in the taxpayer's case was to disallow as a deduction the same amount that was excludible from income under the federal exempt

---

[35] The formula used in the Montana law can be expressed as follows:

| Montana Formula: | (Exempt Interest Income / Total Interest Income) x Total Deductions = Deductions Disallowed |
|---|---|
| $18,328,000 | Exempt Interest Income |
| $89,982,000 | Total Interest Income |
| 20% | Ratio |
| $4,677,639,000 | Total Deductions |
| $952,765,749 | Deductions Disallowed Before Applying Cap Equal to Exempt Interest Deductions |
| $18,328,000 | Deductions Disallowed After Applying Cap Equal to Exempt Interest Deductions |

interest statute.  Citing *American Bank & Trust*, the court held that the Montana deduction limitation statute "directly contravenes a federal law and as such violates the supremacy clause of the federal Constitution."  *Id.* at 389 (citation omitted).  This court finds the Montana court's reasoning persuasive.

Defendant cites two administrative decisions from other states that, like Oregon, required interest on federal debt obligations to be subtracted from the tax base, but in computing a phase-out used a measure such as AGI that included the interest.   Both decisions apply Defendant's theory that phase-outs measured in part by interest on federal debt obligations are permissible because deductions and credits are a matter of legislative grace.  However, because neither decision considers *American Bank & Trust*, this court finds them of no persuasive value.  *See Staudenmaier v. Wisconsin Department of Revenue,* Docket No. 17-I-022, 2019 WL 1308287 (Wisconsin Tax Appeals Comm'n Jan 22, 2019); Ruling No. PD 13-5, 2013 WL 2481179 (Virginia Dept. Taxation Jan 10, 2013).[36]

4.      First National Bank of Atlanta *does not create a* de minimis *rule.*

Defendant seems to argue for a *de minimis* rule:

"Plaintiff adduces no evidence that Oregon's use of federal AGI as an objective measure of ability to pay to determine eligibility for Oregon's special medical subtraction, federal tax liability subtraction, and personal exemption credit imposes greater burdens on holders of federal obligations than on holders of Oregon obligations. *Cf. First Nat. Bank of Atlanta v. Bartow County Bd. of Tax Assessors*, 470 US 583, 597 (1985) (noting taxpayer 'and its *amici* point to no

---

[36] Defendant also cites a third decision, by the Missouri Administrative Hearing Commission, which this court finds inapposite because the state's phase-out was based on a flat dollar cap that apparently did not take into account interest on federal debt obligations.  *O'Brien v. Director*, No. 97-002829 RI, 1998 WL 91197 (1998).  The state law at issue allowed a personal income taxpayer to deduct federal income tax liability, but the amount of the deduction was capped at $10,000.  The cap was not based on AGI or on any other factor; it was simply a flat cap. The Commission found that, because of the cap, the taxpayers did "not get a deduction for the entire amount of the federal tax paid on the interest on federal obligations."  However, the Commission rejected the taxpayers' request for relief because it found the state's subtraction of the interest from the tax base sufficed to comply with the federal exempt interest statute.  The Commission added that, as an administrative tribunal it "does not have the authority to alter the terms of the state taxing statutes."  (*See* Def's 2023 Cross-Mot Summ J at 21 n 8 (citing other state decisions).)

evidence indicating that the difference in cost to the banks between a pro rata deduction and a full deduction is significant enough to prompt banks to forgo the advantages of federal obligations')."

(Def's 2023 Cross-Mot at 20.)

Defendant misconstrues *First National Bank of Atlanta*. In that case, the Court applied an already-established "pro rata deduction" principle that, in the context of a net income tax, closes a loophole for taxpayers who buy federal bonds with borrowed money, then seek to exclude the entire amount of the interest. At issue was a property tax measured by the fair market value of shares of stock in a bank, also described as a bank's net worth. *See* 470 US at 585-86. The state law did not provide any deduction for the value of federal debt obligations held by a bank, and the issue became whether the state statute could be saved by construing it to allow a partial, pro rata deduction that reduced net worth in the same proportion that the exempt obligations bore to the total assets of the bank, as opposed to the full value deduction claimed by the bank. *See id.* at 586-87; *see also* John A. Miller, American Bank & Trust Co. v. Dallas County*: The Quiet Passing of the Separate Incidence Rule,* 41 *Tax Law*. 831, 842 (1988) (explaining pro rata approach with example). The Court upheld the partial, pro rata deduction,

> "recogniz[ing] that some of a bank's federal obligations are represented on the bank's balance sheet by liabilities, while some are represented by net worth. Because the bank-share tax is assessed on net worth, not on total assets, * * * a proportionate deduction immunizes tax-exempt values, for it excludes federal obligations from the tax base--net worth--to the extent that they are represented there."

470 US at 587 (describing state supreme court's reasoning).

The Court compared the property tax problem of whether to allow a full vs. partial deduction of the value of exempt obligations to the income tax problem of whether to allow a full exclusion from income for exempt interest, even if the taxpayer had borrowed the money to buy the exempt obligations. In earlier income tax cases, the Court had long upheld the partial

deduction because a full deduction would allow banks to "shelter taxable income." *Id.* at 595; *see id.* at 591. Likewise, in *First National Bank of Atlanta* the Court upheld the partial deduction for property tax purposes because to do otherwise would allow banks to "shelter their taxable assets," a result Congress could not have intended. 470 US at 596.

Thus, by no means does *First National Bank of Atlanta* set a *de minimis* rule or otherwise narrow the broad holding of *American Bank & Trust* for purposes of this case. Rather, *First National Bank of Atlanta* applies the "sweeping" exemption in the federal exempt interest statute to the factually difficult task of deciding, in a world where money is fungible, what portion of the tax base is created by the federal debt obligations the taxpayer holds, and what portion is created by other, taxable assets of the taxpayer. The passage quoted by Defendant in this case, read in context, simply expresses the Court's confidence that the statutorily mandated pro rata approach will not chill the market for federal debt obligations. *See* 470 US at 596-97.

## VI.    CONCLUSION

This court holds that the use of AGI in the three statutory formulas at issue, without first excluding social security income and interest on federal debt obligations from AGI, violates the prohibition on taxing social security benefits in Article IX, section 9, of the Oregon Constitution and the federal exempt interest statute, 31 USC § 3124(a). Plaintiff is entitled to the refunds he has claimed. Now, therefore,

/ / /

/ / /

/ / /

IT IS ORDERED that Plaintiff's motions for summary judgment for tax years 2023 and 2024 in TC 5477 and TC 5483 are granted and Defendant's cross-motions for summary judgment for tax years 2023 and 2024 in TC 5477 and TC 5483 are denied.

Dated this 6th day of April, 2026.

4/6/2026 8:44:20 AM

Judge Robert T. Manicke